# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## EVANS v. STEWART AND ALS.

### FEBRUARY 18th, 1886.

1. DEATH—*Presumptions of—Precise time.*—A person for seven years not heard of by those who, had he been alive, would naturally have heard of him, is presumed to be dead. But the law raises no presumption as to the precise time of his death. *Davie* v. *Briggs*, 97 U. S. R. 628.

2. IDEM—*Precise time—Onus probandi.*—The burden of proving that the death took place at any particular time within the seven years lies upon the person claiming a right to the establishment of which that fact is essential.

3. IDEM—*Idem— Virginia statute.*—Code 1873, chapter 172, section 47, is simply declaratory of the rules of the common law previously extant in this State.

4. CASE AT BAR.—E., Jr., resided in this State, but left more than seven years before suit for distribution of his father's estate was brought in 1879. Upon the evidence of those most likely to know, if he was alive, a decree was entered in 1880, that he was presumed to have died prior to the death of his father, in 1874. After this decree, M. presented her petition in the suit, claiming to be the lawful wife of E., Jr.; that in 1865 he abandoned her, but until 1871 paid her casual visits, and that he was still living, and praying for alimony out of his share of his father's estate.

HELD:

E., Jr., was presumably dead in 1879. The burden of proving that he was alive when his father died in 1874 rests on the petitioner. She failing to prove that fact can take nothing by her petition.

Appeal from decree of circuit court of city of Alexandria, rendered 28th September, 1883, upon the petition of Mrs. Mary

Jane Evans, by, &c., filed in the cause pending in said court between the distributees and the administrator of John T. Evans, senior, deceased, who died intestate in 1874, leaving three daughters (the parties to the suit), and having had one son, who had been absent more than seven years, and was presumably dead. The style of the cause was Mrs. V. Stewart against Isaac C. O'Neal, administrator, and D. S. Watkins and wife, and Joshua Ellis and wife, distributees of John T. Evans, senior, deceased. The object of this suit was to distribute the intestate's estate on the basis of the presumption that the son had died before his father; and the decree was accordingly. Two days after its entry said petition was filed, wherein the petitioner claimed to be the lawful wife of the son; that after having lived with her from 1848 to 1866, he had abandoned her, but had paid her casual visits until 1871; that the presumption was that he was living when his father died, in 1874; that he was a lawful distributee of the intestate's personalty, and she prayed for an allowance for alimony *pendente lite*, &c. The decree being against her, she appealed.

Opinion states the case.

*Francis L. Smith* and *Ed. Burke*, for the appellant.

*J. M. Johnston, H. O. Claughton* and *C. E. Stuart*, for the appellees.

RICHARDSON, J., delivered the opinion of the court.

On the 8th day of September, 1875, John T. Evans, senior, of Alexandria, departed this life intestate, seized of a large estate, real and personal, the latter amounting to about $100,000. He left no widow, but did leave three daughters surviving him—namely: Virginia Stewart, Mary C. Watkins,

and Ann Maria Ellis, all of whom resided in the State of Virginia at the time of their father's death. There was a fourth child—a son—John T. Evans, junior, who had grown to manhood, married, but had no children, abandoned his wife and home, and left Virginia a number of years prior to his father's death.

Administration upon the estate was granted to Isaac C. O'Neal, who duly qualified and partially administered the personal estate which went into his hands, but reserving undistributed one-fourth of said personal estate, the share of said John T. Evans, junior, if alive.

On the 2d day of October, 1879, said Virginia Stewart filed her bill in the corporation court of the city of Alexandria against Isaac C. O'Neal, administrator as aforesaid, and D. S. Watkins and Mary C. Watkins, his wife, and Joshua Ellis and Ann Maria Ellis, his wife, setting forth the death and intestacy of John T. Evans, senior, and the qualification and partial administration of the personal estate by said administrator; that her late father had four children—said oratrix, Mary C., now the wife of D. S. Watkins; Ann Maria, now the wife of Joshua Ellis, and a son, John T. Evans; that the said John T. Evans had not been heard of for more than seven years, and was believed to be dead; and expressing a willingness on her part, and, as she was informed, a like willingness on the part of the other distributees, to execute the refunding bonds required by law in such cases, prayed that said administrator be required to discover on oath what sum of money he held as the distributable share of John T. Evans, junior, and that said administrator be required to pay over to said oratrix one-third of the same, on the terms prescribed by the statute in such cases, and for general relief.

The administrator did not answer, and the bill was taken for confessed as to him.

Watkins and wife and Ellis and wife answered the bill, admitting the truth of its allegations, and alleging that John T. Evans, junior, had not been heard of for more than *eleven* years, and that they believed he had been dead for more than that time; and that John T. Evans, senior, before his death, believed, and so declared, that his son, John T. Evans, junior, was dead. And said respondents asked that the administrator be decreed to pay them their respective shares of the amount retained by him as and for the share of said John T. Evans, junior.

An account was ordered and taken, founded upon the depositions of witnesses taken in the progress of the investigation made by the commissioner. Based upon the facts reported by the commissioner, the said corporation court, on the 8th day of September, 1880, entered a decree in the cause, declaring that John T. Evans, junior, left the State of Virginia in the year 1866; that since that time he has not returned to the State, and not having been heard from since, he must be presumed to be dead, and to have died prior to the first day of January, 1874; and that it further appearing to the court from said report that John T. Evans, junior, did not die until the year 1875, and also that the said John T. Evans, junior, left no children, the three surviving children of John T. Evans, senior, to-wit: Mary C. Watkins, Ann M. Ellis, and Virginia Stewart, are entitled in equal shares to the whole of the personalty whereof John T. Evans, senior, died the owner and possessor, and that the widow of the said John T. Evans, junior, is not entitled to share in the distribution of same. And it appearing from said report, by one statement, that the sum retained by the administrator as and for the share of said John T. Evans, junior, is $24,943.34, and by another statement to be $23,043.82, and there being a question raised whether either of said statements were strictly accurate, the court reserved its judgment

thereon. But it appearing that the sum of $21,000 was certainly due on account of the share so reserved by the administrator, and that of that sum each of the aforesaid distributees, the surviving children of John T. Evans, senior, is entitled to the sum of $7,000, it was decreed that the administrator pay out of the sum so reserved for John T. Evans, junior, to Virginia Stewart, or Claughton & Walker, her attorneys, the sum of $7,000; to Mary C. Watkins, or John M. Johnston, her attorney, the sum of $7,000, and to Ann M. Ellis, or John M. Johnston, her attorney, the sum of $7,000. And further, that said distributees should thereafter have distribution of the residue of the sum reserved on account of the share of the said John T. Evans, junior, and not thereby distributed.

Two days later, to-wit: on the 10th day of September, 1880, Mary Jane Evans, by leave of court, filed her petition in the cause, asserting that she was entitled to an interest in the estate as the wife of John T. Evans, junior, when the court partially heard the cause again, and then entered a decree rescinding so much of the decree of the 8th day of September, 1880, as orders the payment of $7,000 to each of the distributees therein named, out of the fund reserved by the administrator as the share of John T. Evans, junior, in the personal estate of John T. Evans, senior, and as declares that the widow of John T. Evans, junior, is not entitled to share in the personalty so reserved, but reserving the question whether there is such widow or whether she is so entitled, and in lieu of so much of said former decree as directed $7,000 to be paid to each of the distributees therein named, ordered the sum of $3,500 to be paid to each of them, out of the fund reserved by the administrator as aforesaid.

The petition is in the name of Mary Jane Evans, wife of John T. Evans, junior, by Robert T. Lucas, her next friend, and sets forth that she is the lawful wife of John T. Evans,

junior; that they were lawfully married in the city of Washington on the 13th of January, 1848, at the house of Joseph K. Plant; that the marriage was solemnized by H. Slicex, a regularly ordained minister, and she files as an exhibit the marriage record. The petition further sets forth that no children were born of said marriage; that she was living with her husband in the city of Washington in 1865, and he, having failed in his business of hatter, then abandoned and left her totally dependent upon her own exertions for a livelihood, which she earned as a seamstress; that her said husband, until the year 1871, paid her casual visits, since which time he has totally abandoned her voluntarily, and without cause; that she has heard of him at various intervals since said desertion, and has made every effort to communicate with him, but has failed; that she last heard of him about eight years prior to the filing of her petition, when he was in Virginia; that her husband, said John T. Evans, junior, by the death of his father, the said John T. Evans, senior, is entitled to a distributive share with the plaintiff and defendants to this suit in the estate of the said John T. Evans, senior, deceased; that petitioner has waited for said John T. Evans, junior, to return, but he has never come forward to assert his title to and receive said real and personal estate for the reason, as, she is advised and believes, that he has unlawfully intermarried with some person to her unknown. And the petitioner alleges that the value of the interest of her husband in his father's real estate is fifteen or twenty thousand dollars, and in the personal estate $25,000; and the prayer of the petition is that she be allowed alimony out of her said husband's estate *pendente lite*, and a reasonable sum for her counsel's fees and charges, and, finally, that permanent alimony be decreed to her out of said estate, and for general relief.

Mrs. Stewart, separately, and Mrs. Watkins and Mrs. Ellis,

jointly, demurred to and answered said petition. These respondents admit that John T. Evans, junior, did marry some time previous to the late war, but say they know nothing of the petitioner or whether she is the person to whom John T. Evans, junior, was married, and they call for strict proof. They deny that John T. Evans deserted her, but say if she is the person she represents herself to be, she deserted him in 1862 or 1863, while they were living in Fredericksburg, after first causing him to be arrested and imprisoned by the Federal authorities, then in possession of that place, and they especially deny that he afterwards visited her as late as 1871, and call for proof thereof. They say they do not believe petitioner heard from John T. Evans, as stated in her petition; and they assert that their late father, in his lifetime, advertised exten-sively for the said John T. Evans, and in the places where he was supposed most likely to be, and that, subsequently, at the suggestion of the respondent, Virginia Stewart, the late E. M. Loor did likewise, and that other means likely to be success-ful in ascertaining his whereabouts, if living, were adopted, but without avail, and that they do not believe that he has been heard from, or has returned to the State of Virginia since he left the same about the year 1866. They assert their belief that the allegations of the petitioner are wholly without founda-tion, and made for the purpose of improperly obtaining pos-session of a part of the estate of John T. Evans, junior, deceased; and they deny that the petitioner has any right, in any event, to recover, and especially, because they believe, and the pre-sumption of law is, that John T. Evans, junior, died before the death of his father, John T. Evans, senior.

On the 12th of April, 1881, an order was made in the cause substituting R. W. Ballinger, instead of R. T. Lucas, as next friend of the petitioner, Mary Jane Evans, and, for cause, removing the case to the circuit court of the city of Alexandria

for trial. Subsequently other proceedings were had touching the administration accounts generally, which are not material to the questions here involved, and the cause was continued from time to time (a large mass of depositions having been taken in the meanwhile), until the 2d of June, 1883, when, on the petition of Mary Jane Evans, she was made a party defendant by an order then entered. Mary Jane Evans then filed her answer, in which she admits the allegations in the complainant's bill as to the time when John T. Evans, senior, died (1875), the administration upon his estate, and the number of children; but she denies the allegation as to the death of John T. Evans, junior. She repeats the allegation in her petition as to her marriage, and she avers that she and her husband lived together as husband and wife for many years after their marriage; that as husband and wife they lived together in the District of Columbia in the year 1865, and that they had there so lived at their place of residence for about the period of two years, and that he never afterwards acquired a residence in the State of Virginia.

The cause was finally heard on the 28th day of September, 1883, when a decree was entered dismissing the petition of Mary Jane Evans, at the costs of her next friend, R. W. Ballinger, and dismissing the said petitioner as a party to the suit, and directing the administrator of John T. Evans, senior, deceased, to proceed to distribute the remainder of the estate in his hands amongst the parties to the suit, according to their respective interests as distributees of John T. Evans, senior, deceased. From that decree the case is here on appeal.

The appellant, as the wife of John T. Evans, junior, asserts her right to alimony out of the estate of her said husband, inherited, as alleged by her, from his father, John T. Evans, senior, late of the city of Alexandria. Her claim rests upon the theory that her husband survived his father, and is still living, and one of his distributees at law.

This claim of the appellant was first asserted by her petition, filed in this cause two days after the decree of September 8th, 1880, declaring that John T. Evans, junior, had been absent from the State for the period of seven years, without having been heard from, and must be presumed to be dead; and that said John T. Evans, junior, having left no children, his widow (the appellant) was not entitled to share in the estate of John T. Evans, senior, and that the only lawful distributees were the three surviving children—the plaintiff, Mrs. Virginia Stewart, and the defendants, her sisters, Mary C. Watkins and Ann Maria Ellis. That the previous decree of September 8th, 1880, was well justified, it can scarcely be doubted, as the circumstances connected with the period of absence of John T. Evans having been explained by those who, if he had been alive, would naturally have heard of him.

With the introduction of the appellant's claim the case was presented in an entirely new aspect, and whether the circumstances disclosed by the evidence, brought into the cause in support of that claim, are sufficient to overturn the theory upon which said previous decree was founded, is substantially the question to be now determined by this court. Or, to state it differently, did John T. Evans, junior, survive his father, John T. Evans, senior? If he did not, of course there can be no foundation for the appellant's claim. Upon this question there is no direct evidence, and we have to be guided by the circumstances disclosed in evidence to conduct us to a conclusion sanctioned by the doctrine of legal presumptions. And we may here remark that for the first time this court is called upon to construe our own statute upon the subject, which provides : "If any person who shall have resided in this State go from, and do not return to the State for seven years successively, he shall be presumed to be dead in any case wherein his death shall come in question, unless proof be made that he was alive

within that time." We will first examine the question, independently of the statute, in the light of the authorities both in England and in this country. The contention for the appellant is that John T. Evans, junior, is shown by the evidence to have been living within the seven years next preceding the institution of this suit; that the statute which raises a presumption of the death of a person who has been absent for seven years, without being heard from, was designed to furnish a legal presumption of the time of the death, as well as of the fact of the death; that in the absence of the statute the presumption would be that John T. Evans, junior, is still alive, and that the presumption of the continuance of life only ceases when it is overcome by the countervailing presumption of death raised by the statute, which does not arise until the end of seven years.

On the other side the contention is that the circumstances disclosed show that, prior to the institution of this suit, John T. Evans, junior, had been absent for seven years without being heard from, and that the presumption of law is that he is dead, and that he died in the lifetime of John T. Evans, senior; that there is no presumption of law as to the precise time, within the period of seven years, at which he died, that being a matter of evidence; and that seven years having elapsed without his being heard from, and the presumption of death having arisen, and the appellant asserting that he survived John T. Evans, senior, the burden of proof is on her to establish that fact, essential to the establishment of her claim.

That the doctrine contended for by counsel for the appellant once prevailed in England in a somewhat qualified form, is amply attested by the cases of *Lambe* v. *Orton*, 6 Jur. N. S. 61; *Dunn* v. *Snowden*, 2 Dr. and Sm. 201; and *Thomas* v. *Thomas*, 2 Dr. and Sm. 298. These cases were all decided by Vice-Chancellor Kindersley, and in reviewing them in the leading case of *in re Phene's Trusts*, L. R. 5 Ch. App. 139, Sir G. M.

Giffard, L. J., remarked that they were all decided upon the same general principles, and that the propositions enunciated were in substance these: First. That the law presumes a person who has not been heard of for seven years, to be dead; but, in the absence of special circumstances, draws no presumptions from that fact as to the particular period at which he died. Secondly. That a person alive at a certain period of time is, according to the ordinary presumption of law, to be presumed to be alive at the expiration of any reasonable period afterwards. And thirdly. That the *onus* of proving death at any particular period within the seven years lies with the party alleging death at such particular period. And the subsequent case of *in re Bonham's Trusts*, Law Rep. 4 Eq. Ca. 416, decided by Vice-Chancellor Malens in 1867, followed the decisions of Vice-Chancellor Kindersley, *supra*, and went further, laying it down that "if you cannot presume death at any particular period during the seven years, then at the end or expiration of the seven years, you must presume for the first time that the person was dead, and you must also presume that within that time he is alive," thus giving the full extent of the doctrine contended for by counsel for the appellant. The case was appealed, and Lord Justice Rolt, in November, 1867, discharged the order of Vice-Chancellor Malens, and directed further inquiries, simply stating that there was no evidence for the court to act upon, and that it was a case not of presumption, but of proof. It is equally true that there are a number of the States of this Union in which the doctrine laid down in these English cases has been adopted and acted on. And while there is a difference in the authorities of the different States on the question whether the absent person is presumed to be alive till the end of the seven years, or whether there is no presumption as to the date of his death, but any one relying on his death having occurred at a certain date, must prove that

fact; yet it is not true that the doctrine of the English cases, above referred to, is now adhered to in England, or that it is the prevailing doctrine in this country. On the contrary, quite the reverse is true, and a better rule is now established in England, and by the weight of authority, in this country also.

All the English cases are reviewed and the subject exhaustively treated in *in re Phene's Trusts, supra,* where the doctrine is laid down: "If a person has not been heard of for seven years there is a presumption of law that he is dead; but at what time within that period he died is not a matter of presumption, but of evidence, and the *onus* of proving that the death took place at any particular time within the seven years lies upon the person who claims a right to the establishment of which that fact is essential; and that there is no presumption of law in favor of the continuance of life, though an inference of fact may legitimately be drawn that a person alive and in health on a certain day was alive a short time afterwards." And the Vice-Chancellor (Giffard) enforcing the justice and propriety of the rule, in the course of his opinion, said: "Now, where nothing is heard of a person for seven years, it is obviously a matter of complete uncertainty at what point of time in those seven years he died; of all the points of time the last day is the most improbable and most inconsistent with the ground of presuming the fact of death. The presumption arises from the great lapse of time since the party has been heard of, because it is considered extraordinary, if he was alive, that he should not be heard of. In other words, it is presumed that his not being heard of has been occasioned by his death, which presumption arises from the considerable time that has elapsed. If you assume that he was alive on the last day but one of the seven years, then there is nothing extraordinary in his not having been heard of on the last day; and the pre-

vious extraordinary lapse of time during which he was not heard of has become immaterial by reason of the assumption that he was living so lately. The presumption of the fact of death seems, therefore, to lead to the conclusion that the death took place some considerable time before the expiration of the seven years."

And again, at page 151, the learned vice-chancellor says: "It is a general, well founded, rule that a person seeking to recover property must establish his title by affirmative proof. This was one of the grounds of decision in *Doe* v. *Nepean;* and to assert as an exception to the rule that the *onus* of proving death at any particular period, either within the seven years or otherwise, should be with the party alleging death at such particular period, and not with the person to whose title the fact is essential, is not consistent with the judgment of the present lord chancellor, when vice chancellor, in *in re* Green's Settlement, Law. Rep. 1 Eq. 288, or with the *doctrine* of Lord Justice Rolt, when he said, in *in re* Bucham's Trusts, that the question was one, not of presumption, but of proof; or with the real substance of the actual decisions, or the sound parts of the reasoning, in *Doe* v. *Nepean,* 5 B. & Ad. 86 (E. C. L. R., vol. 27), 2 M. & W. 894; or with the judgments in *Rex* v. *Inhabitants of Harborne,* 2 A. & E. 540 (E. C. L. R., vol. 29); *Reg* v. *Lumby,* Law. Rep. 1 C. C. 196; or with the principles to be deduced from the judgment in *Underwood* v. *Wing,* 4 D. M. & G. 633 (8 H. L. C. 183). The true proposition is, that those who found a right upon a person having survived a particular period, must establish that fact affirmatively by evidence; the evidence will necessary differ in different cases, but sufficient evidence there must be, or the person asserting title will fail."

Connected with the subject under consideration the question of right or title to property, or of exemption from liability in a criminal prosecution arises under a great variety of circum-

stances; hence the great value of the above extract from the opinion in *in re Phene's Trusts,* which refers to a number of prominent decisions on the subject, shows the importance of weighing the remarks of judges according to the peculiar circumstances of the case in hand, extracts from all the cases referred to the true principles of decision, and lays down the principle (strikingly appropriate to the case here), that the *onus* of proving death at any particular period, either within the seven years or otherwise, is not with the party alleging death at such particular period, but is with the person to whose title that fact is essential. The appellant's claim rests upon the alleged fact that her husband, a son of the intestate, survived the said intestate, and it is obvious that the essential fact of survivorship must be established by competent evidence, or else the husband is not clothed with the character of lawful distributee, as against the other members of the class who are confessedly such, and her claim must fail. In applying this doctrine to the case in hand it must be kept in view that there is no presumption of law that the appellant's missing husband, John T. Evans, junior, was living at the death of the intestate; that is a matter of fact to be proved by evidence, and that the *onus* of proof rests on the appellant who claims through him, and whose survivorship is essential to her claim. Survivorship of an intestate is requisite to clothe a person with the character of distributee or a member of a class of distributees. The appellant is not of the next of kin of the intestate, and as such one of the lawful distributees of his estate; but is a stranger, whose claim rests solely on the alleged fact that her husband, a son of the intestate, survived his father. This she must prove, or she has no case.

In Stephen's Dig. of the Law of Ev. (Chase's ed.), chapter fourteen, Article 99, it is said: "A person shown not to have been heard of for seven years by those, if any, who, if he

had been alive, would naturally have heard of him, is presumed to be dead, unless the circumstances of the case are such as to account for his not being heard of without assuming his death; but there is no presumption as to the time when he died." And the author cites the English cases hereinbefore referred to, and others, together with a large number of American cases, including the latest reported decisions on the subject.

And in the late case of *Davie* v. *Briggs*, 97 U. S. 628, Mr. Justice Harlan, after a careful review of all the authorities, English and American, quotes the above passage from Stephens as the settled law.

Now, how is the question affected by our statute referred to above? The counsel for the appellant contend that the court below erred in not holding that the statute was intended to furnish a legal presumption of *the time* of the death, as well as of the fact of the death, and in support of this view great reliance is placed upon the decision in *Clarke* v. *Canfield*, 15 N. J. Eq. Rep. 119, decided in 1862, in which the doctrine contended for was certainly held, and in construing a statute the same as ours. But we find a later New Jersey case—*Hoyt* v. *Newbold*, 45 N. J. Law Rep. (16 Vroom), decided in 1883, which, so far from holding to the construction given to the statute in *Clarke* v. *Canfield, supra,* distinctly decides (1), that a person who absents himself from the State for seven successive years is presumed to be dead, and the party asserting that he is living, must prove it; and (2), that after the presumption of death arises, the burden of proof is on the party denying the death to show that the person is alive, and to overcome the presumption by proof. Parker, J., delivering the opinion of the court in that case, said: "This statute declares that there shall be *presumption of the death* of a person who absents himself from this State for seven successive years,

unless *it be proved* that he was living within that time; and *if it shall be proved* that he is living, his rights shall be restored. The plaintiff insists that the burden is on the defendant to show that Abram Lewis, junior, was dead when the deeds to plaintiff were given. The language of the statute will not admit of such construction. The presumption of death, after continued absence for over seven years successively, *must be overcome by proof* that the person was living."

Our statute is like the New Jersey statute. It is but a legislative declaration of the rule independent of its enactment in the form of a statute. Its very terms forbid the construction contended for by counsel for the appellant. It declares: "If any person who shall have resided in this State go from, and do not return to the State for seven years successively, he shall be presumed to be dead in any case wherein his death shall come in question, unless proof be made that he was alive within that time." It is undeniably true that John T. Evans, junior, did reside in this State; that he left the State more than seven years before the institution of this suit, and that, upon the evidence of those most likely to know, if he was living, a decree was entered in the cause on the 8th day of September, 1880; that he was presumed to be dead and that he died prior to the death of his father, John T. Evans, senior. The question is, has the petitioner, the appellant here, since that decree, rebutted and overturned the presumption of death thus raised? The witness, J. W. Plant, a resident of Washington city, says he was present at the marriage of the appellant with John T. Evans, in Washington city, which he *thinks* took place in 1848; that they lived together some ten years—part of the time in Alexandria and the residue thereof in Washington city; and that the war broke out then and he lost sight of them. Now, the clear preponderance of testimony is that John T. Evans, junior married in 1848, lived in Washington city until sometime

before the war, when he moved to Fredericksburg and was in business there until about 1863, when he was taken a prisoner by the Federal forces and never afterwards made his home in Washington city; but, on returning from prison, lived with his father in Alexandria and his sister in Fairfax until he left the State in 1866, after which he never returned to the State; so that the witness truly, as he says, lost sight of him, and was mistaken in saying, as in effect he did, that John T. Evans, junior, and his wife lived together in Washington city at the breaking out of the war. The same witness says he last saw John T. Evans, junior, in Washington city, at a certain livery stable; that he was in conversation with several persons, none of whom he remembers, when Evans recognized and spoke to him; that this was, he thinks, in the last of the first, or after the beginning of General Grant's second term as President, he was not certain which; and that although he frequently saw the appellant, he never mentioned to her or to any of the Evans family that he had seen John T. Evans, junior, on the occasion named. The witness, though pressed upon the subject, was still in doubt as to when it was he saw Evans, and utterly failed to give any sufficient reason why he thought it was in the last of General Grant's first term, or the beginning of his second term. Taking all the circumstances together, this witness must have been mistaken.

The witness Davis says he saw John T. Evans, junior, in Washington city in the fall of 1869; says, "I am positive because I know it was the year 1869; I know it was in 1869 anyway." But this witness gives no satisfactory or plausible reason even for his statement, and looking to all the evidence on both sides, his statement cannot be relied on as proving anything.

The witness James R. Maguire, of Fredericksburg, who had known John T. Evans, junior, in that city, says that, to the

*best of his knowledge and belief,* he last saw said Evans on the 30th day of May, 1868, *in front of the "Tontine,"* in Alexandria. Witness says he had gone to Washington on an excursion with the Methodist of Fredericksburg on the 28th of May, 1869, visited Alexandria on the 29th, met Evans, junior, in front of the *"Tontine;"* had no conversation, but only shook hands with him and passed on into the *"Tontine,"* asking Evans to *take a drink,* and that he refused, saying he was not drinking then. That this witness, on this casual visit to Alexandria, unmethodically mixed up the taking of a drink at the "Tontine" with the true time at which he saw John T. Evans, junior, in that city, the home of his youth as well as the then residence of his father, would seem, in view of all the circumstances, obvious. The proof in the cause unmistakably shows that the heart of the aged father, who had no other hope of handing his name down to posterity than through this wayward only son, always went out in true paternal solicitude in search after and in aid of his unfortunate, roving boy. How can it be possible, under all the circumstances, that this son, who had never been turned away empty, who, in all his wild ramblings, had never called upon his father for aid without receiving it, could walk the streets of Alexandria, his home city, in the broad light of day unseen and unheard of by father or sisters, or by the numerous acquaintances and friends of his early youth and manhood, yet seen and seen only by this casual visitor when in the act of going into the "Tontine" to take a drink? Evidently the witness was mistaken as to the time when he saw John T. Evans, junior, in front of the "Tontine."

There are other witnesses relied on by the appellant, but the testimony of none of them is sufficiently certain as to dates or circumstances to warrant the inference that John T. Evans, junior, was living later than 1867 or 1868. Certainly there is no testimony that he survived his father, who died in 1874,

and without such evidence the appellant has no case. On the other hand, the record teems with evidence and circumstancs which powerfully sustain the presumption that John T. Evans, junior, is dead, and that he died long prior to his father's death, which occurred in 1874. The evidence is overwhelming that John T. Evans, senior, a man of large wealth and extensively known as a business man, used every available means to ascertain the whereabouts of his missing, only son, if living, but all to no purpose; and that after the death of the father, one of the sisters of the long absent brother took steps to have him extensively advertised for, but still without success. The sisters waited until 1879 before bringing this suit and asking for distribution of their father's estate, upon the theory that their long absent brother must be presumed to be dead. The court so decreed, and we feel assured from all the circumstances that the decree was well founded. The appellant, coming after that decree, asserting that she is the wife of John T. Evans, junior; that he survived his father and is still living, and absents himself, as she believes, because he has unlawfully intermarried with some person to her unknown, must be held to strict proof, at least that said John T. Evans, junior, did survive the intestate and thus become clothed with the character of distributee, a fact indispensably essential to the appellant's claim.

We might rest the case here and the decree appealed from would stand fully sustained by the circumstances of the case, but there is more. In the progress of the investigation below a Bible was found and produced in evidence and proved to have been the Bible used and read by John T. Evans, senior. On the first leaf of this Bible is this record: "John T. Evans departed this life October 28th, 1826; Mrs. Blue died June 26th, 1861; Catherine Philips died August 10th, 1861; Alfred Blue died March 30th, 1869; Mrs. Hough was born January

26th, *eighteen hundred eighty*—ninety years old; January 26th, 1870, still living.    John J. Blue born January 6th, 1882; June 6th, 1870, eighty-seven years old, still living; *John T. Evans, junior, died June 30th,* 1870." All these entries, except the first, are in pencil.    These two John T. Evans recorded, but it is proved by undisputed testimony that these entries are in the handwriting of John T. Evans, senior, and that he had a son of that name who died in infancy, and that the after-born son here in question was named John T. Evans.    It is also proved that such of the persons mentioned in this record were members of the family and how connected.    The last entry, John T. Evans, junior, died June 30th, 1870, is fresher in appearance than the preceding entries, and some of the letters seemed of a darker hue than others.    And while the able and energetic counsel for the appellant pushed the investigation as to the genuineness of this last entry to the utmost extent that skill and ability could suggest, yet witnesses, who had the best possible opportunities of knowing, testify unhesitatingly that it is the genuine handwriting of John T. Evans, senior, one of the witnesses saying: "I am sure it is in the handwriting of John T. Evans, senior; those letters and figures I have seen so often; they are exactly as he made them; I did not see him make them, but I know it is his style—his handwriting." If anything more could possibly be necessary to warrant the presumption that John T. Evans, junior, is dead, and that he did not survive his father, it is found in the potential circumstance that there has been since early in 1875 the large sum of some $30,000 awaiting this man who, in life was poor and needy, and yet remains uncalled for.    We are clearly of the opinion that all the circumstances warrant the presumption that John T. Evans, junior, is dead, and that he died prior to the death of his father, and that such fact, all-sufficient for the purpose of

this case, precludes the possibility of any just claim on the part of the appellant to share in the intestate's estate.

There is no error in the decree appealed from, and the same must be affirmed.

DECREE AFFIRMED.