## Wytheville.

SECURITY BANK OF RICHMOND, VIRGINIA, V. EQUITABLE LIFE
ASSURANCE SOCIETY OF THE UNITED STATES.

June 8, 1911.

1. EVIDENCE—*Presumption of Death.*—The presumption of death
   from seven years' absence from the State only arises at the
   end of the seven years. There is no presumption of death at
   any time within the seven years, or that a party is alive at
   any particular time within that period, and the burden is on
   the party asserting such a claim to prove it by evidence satis-
   factory to the jury.

2. LIFE INSURANCE—*Proof of Loss—Province of Court.*—Whether or
   not satisfactory proofs of a death loss under a life insurance
   policy have been furnished is, in the first instance, a question
   to be passed upon by the court as constituting a condition
   precedent to the right to bring suit.

3. LIFE INSURANCE—*What Is "Satisfactory Proof of Loss."*—There
   is no precise standard for determining what constitutes "satis-
   factory proof of loss" under a life insurance policy. But if
   the preliminary proofs are such as, when introduced upon the
   trial of the case, standing alone and without further proof,
   would be sufficient to support a verdict of a jury in favor of the
   plaintiff, they should be held to be satisfactory, as a condition
   precedent to the institution of an action. In the case at bar,
   the evidence does not satisfactorily prove the death of the
   assured.

4. LIFE INSURANCE—*Presumption of Death—Computation of Time.*—
   Evidence tending to raise the presumption of the death of an
   assured who has disappeared and not been heard from must
   be considered as of the time the proof of loss was rendered,
   and certainly not later than the time of institution of suit.
   The period elapsing between the institution of the suit and its
   termination should not be taken into consideration. Further-
   more, to warrant a recovery on a life insurance policy, it is
   incumbent on the plaintiff to show that the death of the assured
   occurred during the life of the policy.

Error to a judgment of the Law and Equity Court of the

city of Richmond.    Judgment for the defendant.    Plaintiff assigns error.

*Affirmed.*

The following instructions were asked for by the plaintiff:

### (Refused)

(I) "The jury are instructed that, under the statute of Virginia, if any person, who shall have resided in this State, go from, and do not return to the State for seven years successively, he shall be presumed to be dead in any case wherein his death shall come in question, unless proof be made that he was alive within that time.

(II) "The jury are further instructed that, if Charles H. Hudspeth resided in this State on the 4th day of March, 1902, and left the State on that date or within a few days thereafter, and did not return for seven years successively, the law presumes that he is dead, unless proof be made that he was alive within that time. The burden is upon the defendant to overcome such presumption by proof that he was so alive.

(III) "The jury are further instructed that, while the law presumes death from such an absence of seven years (see first and second instructions), yet, the law makes no presumption as to the time of death within the said seven years, neither fixing it at the beginning nor at any intermediate time, nor at the end of the seven years; nor does the law raise any presumption that the party who has so left the State has continued to live or that he is living at any particular time during the seven years; in other words, there is no presumption of law either as to the time of death or as to the continuance of life. The question whether the party died at the beginning of that period or before any particular date therein, or at the end of it, is to be determined by the jury according to those circumstances, if any,

proven by the evidence, which may reasonably satisfy the jury.

(IV) "The jury are further instructed that, while the burden is upon the plaintiff to show to your satisfaction that Charles H. Hudspeth died before the 14th day of April, 1903, yet the plaintiff is not called upon to prove such a claim beyond a reasonable doubt, but only to prove the same by a preponderance of the evidence. Nor is it called upon to prove the manner of his death. Nor need it be proved by an eye witness nor by direct evidence. The time of the death may be inferred by the jury from the circumstances and conditions surrounding him at the time he is said to have disappeared, or was last seen or heard of, viz: his character, habits, conditions, affections, attachments, prosperity, or adversity and objects in life, which usually control the conduct of men and are the motives of their actions, and any other evidence as to his alleged disappearance and absence which, submitted to the test of reason and experience, would make the mere abandonment of home and family improbable and would, by a preponderance of the evidence, satisfy you that he died before the said 14th day of April, 1903. It is for you to determine from all the evidence whether or not he died before that date. If from the preponderance of the evidence you believe that he died before that date, you must find for the plaintiff, but, if you do not so believe, you must find for the defendant.

"The jury are instructed that they are not to consider in any way or to any extent any statement contained in the proof of death as evidence of any fact alleged therein. They are allowed only as evidence of what kind of proof of death the plaintiff furnished the company before the institution of this suit, and the jury are further instructed that if they believe that the plaintiff furnished as definite proof of the alleged death of Charles H. Hudspeth as the circumstances would then permit and in a reasonable time

Security Bank *v.* Equit. L. Soc., 112 Va. 462.    465

Opinion.

thereafter under the circumstances, then they are instructed that satisfactory proof was furnished to the defendant of the death of Charles H. Hudspeth."

But the court refused to give the same, and gave in lieu thereof the three instructions marked respectively 1, 2, 3 copied in the opinion of the court.

*Meredith & Cocke, John H. Guy* and *Samuel A. Anderson,* for the plaintiff in error.

*Christian, Gordon & Christian* and *Hill Carter,* for the defendant in error.

Keith, P., delivered the opinion of the court.

Three policies of insurance, amounting to $17,500, were taken out by Charles H. Hudspeth in the Equitable Life Assurance Society of the United States. At the institution of this suit, the Security Bank of Richmond, Virginia, the plaintiff, was the undisputed beneficiary. of the three policies, and brought its action to the first Monday in August, 1903, averring that Hudspeth, upon whose life the policies were issued, was dead, and asking judgment for the amount of the insurance.

These policies contain a provision which is as follows: "The Equitable Life Assurance Society of the United States hereby assures the life of Charles H. Hudspeth, of Midlothian, Va., hereinafter known as the assured, and on receipt of satisfactory proofs of the death of the assured, providing this policy is then in force, agrees to pay" the amount for which the policy is written.

The defendant pleaded non-assumpsit, and for grounds of defense said: (1) That the policies of insurance sued on lapsed for non-payment of premiums on April 14, 1903; (2) that no proof of the death of the assured has been furnished to the defendant, as required by said policies of

59

insurance, and that no presumption of his death arose until the expiration of seven years from the time he was last seen alive, which time is stated by the plaintiff to have been about 2 p. m. on Monday, March 10, 1902; (3) that the burden of proof is on the plaintiff to show that the assured died prior to the time when the policies lapsed, on the 14th of April, 1903.

There was a verdict and judgment for the defendant, to which the plaintiff applied for and obtained a writ of error.

Passing over the preliminary correspondence between the attorneys for the Security Bank and the Equitable Life Society, we come to the proofs of death furnished to the society before the institution of the suit, in compliance with the stipulation in the policies above set forth.

The eighth clause of claimant's statement is as follows: "State all facts regarding cause and circumstances of death." Ans. "See paper hereto attached, marked 'A'." The paper here referred to is as follows:

"He disappeared from Richmond about March 6, 1902, without warning to family and friends, was traced to Washington, D. C., by detectives who learned that he had been drinking very heavily. Since that his family have not had a line from him. We sent full description to all police bureaus and detective agencies offering reward.

"It is said he was very ambitious to make money, was very despondent and exceedingly dissipated. Had lost all of his means, which we think caused him to take his own life. Last time seen as far as we know was at Johnson Hotel, Washington, D. C., about 2 p. m. on Monday, March 10, 1902. After his departure, his room was searched and in it were found a number of empty whiskey bottles carried there by him. It was also proven that he drank very heavily at bar of said hotel.

"His family also have made every effort to locate him, but without success.

"Attached to and made a part of the proof of death of Charles H. Hudspeth by the Security Bank of Richmond.

"JACKSON GUY, Cashier."

The paper marked "A" was dated April 22, 1903, and on April 27th the general agent of the Assurance Society informed Mr. Guy that the proofs submitted were not satisfactory to his company. It appears that the policies sued on were kept in force until April 14, 1903, by the payment of premiums, and no further payment having been made they lapsed upon that day.

After the evidence had been submitted to the jury, the court refused to give certain instructions asked for by the plaintiff, but instructed the jury, "That whilst the law presumes that a person who has left home and has not been heard from for seven years has died, yet the presumption of death in such cases only arises at the end of the seven years; that is to say, that the presumption of law of death does not arise until the expiration of seven years; but there is no presumption of law as to the particular time of death within the seven years, nor does the law raise any presumption that the party who has so left the State has continued to live or that he is living at any particular time during the seven years; but the burden is on the party asserting such a claim to prove it by testimony satisfactory to the jury. And in this case the jury are instructed that the burden of proof is upon the plaintiff to show to your satisfaction that Charles H. Hudspeth died before the 14th day of April, 1903; and unless you are so satisfied from the evidence of the proof of this fact you must find for the defendant."

This instruction is in accordance with the decision of this court in *Evans* v. *Stewart*, 81 Va. 724, and correctly states the law.

The second instruction given was: "That if the policies sued on in this case had lapsed by reason of non-payment of premiums before the bringing of this suit, or that suit

was brought before satisfactory proofs of the death of the assured had been furnished to the defendant, then the jury must find for the defendant."

And the third instruction: "That the statements set forth in the paper signed Jackson Guy, Cashier, and marked 'A' with the claimant's statement are not 'such satisfactory proofs of the death of the assured' as is contemplated by the policies sued on in this court; and unless the jury believe from the evidence that further proof of the death of the assured was furnished to the defendant before this suit was brought, then they must find for the defendant."

The case turns upon whether or not the second and third instructions correctly propound the law. The case was argued ably and fully, orally and upon the briefs. A great number of cases were cited—a greater number than can be considered and criticised within the limits of an opinion, and we shall, therefore, refer specifically only to those which seem to bear most directly upon the points at issue.

One of the principal controversies raised in the case is whether or not the preliminary proofs of death are to be passed upon by the court as constituting a condition precedent to the right to bring the suit, or whether it is for the jury to determine whether or not they comply with the provision of the policies, which required the plaintiff to furnish satisfactory proofs of death of the assured.

We are of opinion that the weight of authority imposes the duty upon the court to determine, in the first instance, whether or not the proofs are satisfactory.

In 25 Cyc., at p. 947, note 27, in enumerating questions of law for the court, there is included, "The legal effect and sufficiency of the proofs of loss furnished in compliance with the requirements of the policy." Citing a number of cases.

In *Citizens' Fire Ins. Co.* v. *Doll*, 35 Md. 89, 6 Am. Rep. 360, it is said: "The preliminary proofs of loss required by

an insurance company of the assured are not *per se* evidence to the jury of his loss; they are conditions precedent to his right to recover, and it is for the court and not for the jury to decide on their sufficiency."

In *Mutual Life Ins. Co.* v. *Stibbe,* 46 Md. 302, by the terms of the policy the amount insured was payable in ninety days after satisfactory proofs of death. At the trial, the proofs of death furnished in compliance with this requirement were offered in evidence by the plaintiff, for the purpose of showing such compliance. *Held,* "that the same were admissible for that purpose and for no other, and their sufficiency was a question for the court to determine."

In *Policemen's Association* v. *Ryce,* 213 Ill. 9, 72 N. E. 764, 104 Am. St. Rep. 190, it is said, that while the questions of fact, whether proofs of loss or of death have been furnished, or whether the assured rendered as full proofs of loss or of death as the circumstances would permit, are for the jury, yet the legal effect of such proofs is a question of law for the court.

In *Gauche* v. *London, &c., Ins. Co.,* (C. C.) 10 Fed. 347, the court said, that the sufficiency of preliminary proofs, there being no question of waiver involved, is a question of law for the court and not a question of fact for the jury.

The case of *Charter Oak Life Ins. Co.* v. *Rodel,* 95 U. S. 232, 24 L. Ed. 433, is relied upon by the plaintiff in error, but we do not think it bears out its contention. In that case the policy provided that payment should be made "ninety days after due notice and satisfactory evidence of the death of A, and of the just claim of the assured under this policy, has been received and approved by the insurers"; and it was held that the words, "just claim of the assured" had reference to her claim or title to the policy, and not to the justness of her cause of action thereon. Mr. Justice Bradley, speaking for the court, said: "We think there was no error in the ruling of the court in admitting in evidence the proofs

of death, which had been served on the defendant. Of course, the company could not justly contend that it might arbitrarily object to the sufficiency of the proofs; but it had an undoubted right to demand and insist upon such proofs as the law would adjudge to be reasonable and satisfactory. The objection to those furnished was that, whilst otherwise sufficient as proofs of the death of the insured, they disclosed at the same time a cause of death which exempted the company from liability; and hence could not be said to be sufficient proof of 'the just claim of the assured' as well as of the death of Rodel. . . . Proof of death was all that was required. This was given, and does not appear to have been objected to. If the proofs also disclosed facts of which the defendant could avail itself as a defense to an action on the policy, this would not derogate from the sufficiency of the proofs as proofs of death. But whilst the disclosure of such facts might well suggest to the company the propriety of refusing payment and standing suit, it would be no bar to the bringing of the suit; otherwise, no suit could ever be brought until the parties had gone through an extrajudicial investigation resulting favorable to the assured." We think it is to be inferred that if the proofs of death, as distinguished from the justness of the claim, had been the question at issue, and those proofs had been found insufficient by the court, the judgment would have been otherwise.

*Noyes* v. *Commercial Travelers Accident Asso.*, 190 Mass. 171, 76 N. E. 665, seems to support appellant's contention, and to hold that under a provision in a policy for payment "within sixty days from the receipt by its board of directors of proof satisfactory to said board of the particular disability suffered by said member," it is a question for the jury whether the plaintiff furnished proof which reasonably should have satisfied the directors.

In *Buffalo Loan & Trust Co.* v. *Knights Templar, &c.*, 126 N. Y. 450, 27 N. E. 942, 22 Am. St. Rep. 839, Judge Andrews, speaking for a unanimous court, said: "The words 'satisfactory proof' entitled the association to demand that the fact of death should be shown with reasonable definiteness and certainty, and if the proofs furnished failed to satisfy the association of the fact of the death, the association acting reasonably and in good faith could require further evidence. But the insurer cannot under guise that the requirement that 'satisfactory proof' of the death of the assured should be given, demand information of the cause of the death. This would be a different subject. The information, however important it might be in its bearing upon a death from the excepted causes, nevertheless has no relation to the one fact which alone the claimant is bound to embrace in his proofs." That is to say, in his preliminary proofs. In that case the proof of death was satisfactory, and the insurer had no right to demand more, and could not require information as to cause of death.

In *Travelers Ins. Co.* v. *Sheppard*, 85 Ga. 751, 12 S. E. 18, it was held, that "Where the policy stipulates for preliminary proof of loss, and the declaration alleges that such proof was furnished, and where the whole declaration is denied by plea, the plaintiff is entitled to verify the allegation by submitting in evidence the affidavits which were furnished to the company as preliminary proof. But the affidavits are evidence for the sole purpose of showing compliance with the terms of the policy as to preliminary proof, and the better opinion is that their sufficiency is for the court. They are no evidence against the company of any fact stated in their contents. Though the policy stipulates that the preliminary proof of death, etc., to be furnished shall be 'direct and affirmative proof,' any proof that ought to be satisfactory will suffice, although it may involve inference of the

main fact from other facts, and therefore be properly denominated circumstantial rather than direct evidence."

From an examination of the authorities we have reached the conclusion that it was for the court to pass upon the sufficiency of the preliminary proofs.

The question which next arises is, did it correctly discharge that duty?

Every case seems to stand upon its own particular facts, and no precise standard, as far as we have been able to discover, is established for the guidance of courts in determining what is satisfactory proof of loss. As was said in *Buffalo Loan, &c., Co.* v. *Knights Templar, supra,* "The words 'satisfactory proof' entitled the association to demand that the fact of death should be shown with reasonable definiteness and certainty." But that is a variable standard. Perhaps as accurate a measure as we can apply is to say, that if the preliminary proofs are such as, when introduced upon the trial of the case, standing alone and without further proof, would be sufficient to support a verdict of a jury in favor of the plaintiff, they should be held to be satisfactory proofs, as a condition precedent to the institution of an action.

It will be observed, in the case under consideration, that when the claimant was called upon to state all facts regarding the cause and circumstances of death, the reply was a reference to an attached paper marked "A," which has already been copied into this opinion.

The instruction given by the court told the jury that statement "A" did not contain satisfactory proofs of the death of the assured, and that the jury should find for the defendant, unless they believed from the evidence that further proof of the death of the assured was furnished to the defendant before this suit was brought. The jury by their verdict, therefore, found that there was no such proof furnished to the defendant; and in the petition for a writ

of error it is said that the proof offered upon the trial was but "an elaboration of the statements contained in the said proof of death." The whole case made by the plaintiff is, therefore, to be found in statement "A."

This brings us to inquire as to the probative value of the facts set forth in statement "A"; and here it must be borne in mind that the paper was prepared on the 22nd of April, 1903, and that Hudspeth was last seen on March 10, 1902; that the suit was brought to August rules, 1903; and that the judgment complained of was rendered on the 10th of March, 1910. The evidence must, therefore, be considered as of the time the proof of loss was rendered, and certainly not later than the time of institution of the suit. In some of the cases it seems that the period elapsing between the institution of the suit and its determination was taken into consideration; but in that view we cannot concur.

But even if the period of absence down to the trial were to be considered in aid of statement "A," it would not avail the plaintiff in error, for not only must it show that the assured is dead, which at the expiration of seven years would be presumed, and as to which the presumption would be strengthened as the period from his disappearance increased, but it is also necessary, in order to maintain an action in this case, to show that death occurred during the life of the policy—that is to say, prior to April 14, 1903. In other words, it would aid the presumption of death, but would be of no value as tending to fix the time of death. See *Evans* v. *Stewart, supra.*

In 2 Wharton's Evidence (3rd ed.), sec. 1277, the law is thus stated: "It has been incidentally observed that, aside from the general presumption of death arising from unexplained absence abroad for seven years, certain facts have been noticed by the courts as affording grounds on which inferences of death, more or less strong, may rest. Among these facts may be noticed: Presence on board a ship known

to have been lost at sea, the inference of death increasing with the length of time elapsing since the shipwreck; exposure to peculiar perils, to which death will be imputed if the party has not been subsequently heard from; ignorance, as to such person, after due inquiry, of all persons likely to know of him if he were alive; cessation of writing of letters, and of communications with relatives, in which case the inference rises or falls with the domestic attachments of the party. Thus, death may be inferred by a jury from the mere fact that a party who is domestic, attentive to his duties, and with a home to which he is attached, suddenly, finally, and without explanation, disappears. On the other hand, it is admissible to explain such disappearance by putting in evidence pecuniary embarrassments."

In *Ryan* v. *Tudor*, 31 Kan. 366, 2 Pac. 797, Mr. Justice Brewer (afterwards of the Supreme Court) said: "In reference to the death of Ryan, it is clear that there was no direct proof. The matter rests mainly on presumptions. The general rule in respect thereto is, that at the close of a continuous absence of seven years, during which time nothing is heard of the absent person, death will be presumed. Now at the time of the commencement of this action, only five years and eight months had elapsed since Ryan left New Hampshire, and at the time of trial seven years' absence had not fully run; so that with nothing but the mere fact of unexplained absence, before it, the court was clearly right in its instructions. It is true that besides the mere fact of unexplained absence there were one or two slight matters bearing upon this question. While a man of good health, Ryan was past middle life when he went away. He told his relatives in New Hampshire that he would be back in a month. He told his agent in Kansas that as soon as he got settled he would write. He neither returned nor wrote. . . . So that perhaps the court ought to have left it to the jury

as a question of fact, whether, considering Ryan's eccentric disposition, his lack of family, his expressed uncertainty as to his future residence on the one hand, and on the other his age, his promise to write and return, and his long absence, his death ought, or ought not, to be inferred. Be that as it may, under the instructions as given, the jury ought not to have found as they did. As more than seven years have now passed since Ryan's departure, if no tidings have been received from him, the presumption of death unquestionably arises. But whether dead or alive, defendants' obligation to pay remains. If Ryan be alive, they should pay the money to the agent, that it may be by him remitted to Daniel Fish in accordance with Ryan's instructions. If on the other hand, Ryan be dead, an administrator should be appointed to collect this money and distribute it among his heirs. It is unnecessary that this suit be dismissed, for if an administrator be appointed, the death of Ryan can be suggested, and the suit revived in the name of such administrator."

*Tisdale* v. *Connecticut Mutual Life Ins. Co.*, 26 Iowa 170, 96 Am. Dec. 136, was much relied upon by plaintiff in error. It seems to add but little to the force of the quotation from Wharton. There was evidence at the trial tending to prove the following facts: That the party upon whose life the policy was issued was a young man of exemplary habits, excellent character, of fair business prospects, respectably connected, and of the most happy domestic relations. He had the fullest confidence of his friends and the entire affection of his wife, and was living in apparent happiness, with no cause of discontent with his condition, which would have influenced him to break the domestic and social ties with which he was so pleasantly bound to life. Visiting Chicago, September 25, 1866, upon business, he was last seen by an acquaintance on the corner of Lake and Clark streets in that city, about 3 o'clock p. m. of that day. No trace of

him was afterward discovered, though his friends made every effort to find him, and ascertain the cause of his mysterious disappearance. A large reward was offered through the newspapers for information that would lead to his discovery, either dead or in life. The detective police were employed to search for him without results. No tidings have been received of him, and not the faintest trace of the cause or manner of his disappearance has been discovered. He gave no intimation to any one of an intention to absent himself; and the latest declaration of his intentions was to the effect, that he expected to leave Chicago the day of his disappearance to join his wife at Dubuque. He owed no debts amounting to any considerable sum, and had made payment of some small ones about the day of his disappearance. His valise, containing clothing and other articles commonly carried by travelers, was found at his hotel. His bill there was unpaid. The reporter says that a further statement of the evidence is not necessary for a proper understanding of the points ruled. It is said in the opinion: "Any facts or circumstances relating to the character, habits, condition, affections, attachments, prosperity and objects in life, which usually control the conduct of men, and are the motives of their actions, are competent evidence from which may be inferred the death of one absent and unheard from, whatever has been the duration of such absence. A rule excluding such evidence would ignore the motives which prompt human actions, and forbid inquiry into them in order to explain the conduct of men. The true doctrine may be readily illustrated thus: An honored and upright citizen, who, through a long life, has enjoyed the fullest confidence of all who knew him—prosperous in business and successful in the accumulation of wealth; rich in the affection of wife and children, and attached to their society; contented in the enjoyment of his possessions, fond of the associations of his

Security Bank *v*. Equit. L. Soc., 112 Va. 462.    477

Opinion.

friends, and having that love of country which all good men possess—with no habits or affections contrary to these traits of character—journeys from his home to a distant city and is never afterward heard of. Must seven years pass, or must it be shown that he was last seen or heard of in peril, before his death can be presumed? No greater wrong could be done to the character of the man than to account for his absence, even after the lapse of a few short months, upon the ground of a wanton abandonment of his family and friends. He could have lived a good and useful life to but little purpose, if those who knew him could even entertain such a suspicion."

In *Seeds, Executor*, v. *Grand Lodge of Iowa, &c.*, 93 Ia. 175, 61 N. W. 411, the court held, that where a married man leaves home because his wife declines to live with him, and later professes to be unmarried and states that he is going to Dakota. He is in good health when last seen. Six years after his disappearance he is advertised for to receive a legacy. "*Held*, there is no presumption of death by reason of the fact that he has not been heard from in seven years. At any rate it will not be presumed that he dies within two years after disappearing, so as to render valid an insurance policy which lapsed at the end of said two years for non-payment of dues and assessments." In that case, while the law of *Tisdale* v. *Insurance Co., supra*, is not questioned, the facts of the two cases are differentiated, and Rowell, the beneficiary in the case from 93 Iowa, is shown to be a very different man from Tisdale. The court states that "he was wanting in the character, habits, condition, affections, attachments and objects in life, which usually draw men to their families, their homes, and the society in which they have lived. It was evidently not his purpose to return and dwell with his family, but, cast off as he was for his own fault, and with the character and inclinations which he evidently possessed, his object was to entirely

withdraw himself from them. There is nothing in the condition of his health from which to infer death, for it is shown that when last seen he was in usual good health."

Contrast the proof furnished in statement "A" with the facts in *Tisdale's case, supra,* and one cannot but be impressed with the fact that the two cases differ in almost every circumstance. We have given statement "A" our most careful consideration, and we are of opinion, first (as before stated), that it was the province of the court to determine whether or not it furnished sufficient proof of death; second, that the court correctly held that it did not furnish sufficient proof of death; and, third, that if the court had submitted that question to the jury and they had found for the plaintiff upon the faith of the facts stated in statement "A," which we have seen contained all the facts of probative value introduced before the jury, it would have been the duty of the court to have set aside the verdict; and, therefore, we are of opinion, from every point of view, that there is no error in the judgment of the lower court, which is affirmed.

*Affirmed.*