# JOHN SCHAUB, Jr., *vs.* THOMAS W. GRIFFIN, ADMINISTRATOR.

*Presumption of Death from Unexplained Absence for Seven Years— Administration Upon the Estate of a Person Presumed to be Dead —Bill in Equity by Next of Kin Against an Administrator— Title to Property of a Decedent.*

When a person leaves the State and is not heard of for seven years the presumption is that such person is dead. But there is no presumption as to the time of his death, and a party alleging that he died at any time before the expiration of the seven years must prove it.

When a person is proved to have been alive at a certain time and is not seen or heard of afterwards, the presumption is that he continued to live until his death is presumed to have occurred, that is, at the end of seven years.

When a father and his son both disappear and are unheard of for more than seven years, the presumption is that they are both dead ; and property in which the father had a life estate and the son a vested remainder, but which would go to the father if he survived his son, should be distributed as the property of the son.

When the estate of a person who is presumed to be dead, because unheard of for more than seven years, is administered upon and distributed to his next of kin, the parties making payments of such property under an order of the Court will be protected from the claims of the person so presumed to be dead, if it should afterwards be shown that he is still alive.

A person entitled as distributee to a share in the estate of a decedent may file a bill in equity against the administrator of the estate to obtain such share.

A father and his son both left the State in 1881. The former was heard of later than his son, but neither of them had been seen or heard of for more than seven years before the bill in this case was filed. In 1888 the father became entitled to a life interest in a sum of money as a surviving husband of his deceased wife, Catherine, and the son became entitled to a vested remainder in the same, but if he died without issue before his father, the latter would take the whole interest. This money was paid to the administrator of Catherine. In 1895 the next of kin of the son filed a bill in equity against the administrator asking for the distribution of the fund to them. *Held,*

1st. That the presumption is that at the time of the death of Catherine in 1888, both father and son were alive, since the full period of seven years had not then elapsed since their disappearance.

2nd. That there is no presumption that the father survived his son from the mere fact that he was seen at a later period than his son.

3rd. That there being no evidence as to when either of the parties died, but the presumption being that both are dead, the life interest of the father terminated and the money should be distributed to the next of kin of the·son.

4th. That an order of Court directing the payment of the money to the representatives of the son would protect the parties making such payment, although it might hereafter appear that the son is still alive.

5th. That this bill cannot be maintained by the next of kin of the son against the administrator of Catherine, because title to the property of a decedent can only pass through an administration upon the estate of the decedent.

6th. That an administrator should be appointed for· the estate of the son who will be entitled to receive the money from the defendant and distribute the same to the next of kin.

Appeal from a decree of the Circuit Court of Baltimore City (DENNIS, J.), dismissing, without prejudice, the bill of complaint of the appellants, which was filed on February 21, 1895.

The cause was argued before McSHERRY, C. J., BRYAN, BRISCOE, PAGE, BOYD and RUSSUM, JJ.

*Alexander Preston* (with whom was *J. Alexander Preston* and *Robert Ludlow Preston* on the brief), for the appellants.

Under the decision in *Cowman* v. *Rogers*, 73 Md. 405, where two persons perish in the same disaster, there is no presumption that one survived the other, and by analogy, where two persons disappear and are unheard of for more than seven years, no presumption can arise that one survived the other ; and as no proof can be obtained to show which one was the survivor, it is certain that there cannot be a survivor in law. So, it necessarily follows, that the matter to this extent, must be treated as one incapable of being determined, or as the law practically says, no survivor exist.

Therefore, in accordance with this decision, it is a plain proposition that Lewis Kroll did not survive his son, nor did his son survive Lewis Kroll, and it follows, therefore, that anyone claiming this fund through any relation to Kroll or his son must assume the burden of proving which one survived the other. Is this fund, then, never to be distributed, and to become the absolute property of the person who happens to be the administrator? Such a conclusion is repugnant to every principle of justice, and so Courts have adopted a principle, which is illustrated in the case of *Nichols, Ex.*, v. *Newell*, 75 N. Y. 78. In that case the facts showed that a certain Mrs. Walter died in 1870, leaving a will, by the terms of which she created a trust consisting of three funds, two of $15,000 each and one of $30,000. She left surviving her a husband, one daughter and one son, both infants. The income of one fund of $15,000 was left in trust to her daughter, the income to be paid to her for life, with remainder over to the heirs of her body, and in default of heirs, to the heirs of the testatrix living at the time of the daughter's death. The trust of $15,000 to her son was the same. The income of the $30,000 fund was left to her husband for life, and upon his death the principal to the heirs of the body of the testatrix, then living, and in default of such heirs, to certain persons named. The husband and two infants were lost in the wreck of the ship "Schiller" in 1875, and no proof of survivorship could be shown. The question of who was entitled to these funds, then arose. The Court, passing upon this question, says : " Hence, in the absence of other evidence (of survivorship), the fact is assumed to be unascertainable, and property rights are disposed of as if death occurred at the same time. This is done not because the fact is proved or that there is any presumption to that effect, but because there is no evidence and no presumption to the contrary. *    *    * The one upon whom the onus lies, fails, and persons thus perishing must be deemed to have died at the same time, for the purpose of disposing of their property." *Russell*

v. *Hallett*, 23 Kans. 276, follows *Newell* v. *Nichols*. In this case, a mother and three children were drowned in the Fall river, by a wagon overturning. One witness heard the cries of the mother for help, and it was sought to raise a presumption that she survived her children on that account. The title of certain property depended on the question of survivorship. But the Court quoted from *Newell* v. *Nichols*, as set out hereinbefore, and went on to say, that no presumption could exist, and added as to the disposal of the property the following : " While therefore it is correct to say that the law makes no presumption on the subject, the practical consequence is nearly the same as if the law presumed all to have perished at the same moment." These two cases ars illustrations of the rule, which the appellants claim should be applied by analogy to this case, and that this fund should be disposed of as if Lewis Kroll and his son perished at the same moment, because their rights in property can only be disposed of equitably in this way.

The case was submitted on brief by *Fred. C. Cook* and *Edwin J. Griffin* for the appellee.

1. *As to Presumption of Death.* " The general rule is that anyone who has been unheard of for the space of seven years may be for all legal and equitable purposes presumed to be dead. Therefore, * * * the death *, * may be assumed to have happened just seven years after the day on which it is shown by the proof that he was last heard of." *Tilly* v. *Tilly*, 2 Bland, 444 ; *Shriver, &c.* v. *State*, 65 Md. 286. This rule is not applied, however, when the circumstances of the case are such as to account for his not being heard of without assuming his death. *Davie* v. *Briggs*, 97 U. S. 633 ; *Watson* v. *England*, 14 Sim. 28 ; *Bowden* v. *Henderson*, 2 Sm. & G. 360 ; *McMahon* v. *McElroy*, Ir. Rep. 5, Eq. 1 ; *Lakin* v. *Lakin*, 34 Beav. 443. And only when the absence was intended for temporary purposes. *Loring* v. *Steineman*, 1 Metcalf (Mass.), 211 ; *Wentworth* v. *Wentworth*, 71 Me. 72 ; *Sinsenderfer* v. *Pac., &c., Ins. Co.*, 19 Fed. Rep. 68.

2. *As to Presumption of Time of Death.* There is no pre-
sumption of when the death actually occurred. This is a
matter of distinct proof. There is no presumption of the
father surviving the son or predeceasing him. *Davie* v.
*Briggs*, 97 U. S. 634; *Shriver* v. *State*, 65 Md. 287, even
when they perish in the same catastrophe. *Cowman* v.
*Rogers*, 73 Md. 404, &c.

If at the time of the death of Catharine Kroll, the hus-
band and son were both living, the husband took a life in-
terest in her estate (Code, Art. 45, sec. 2), and the son took
his mother's entire interest subject to the father's life estate.
(Code, Art. 93, sects. 123 and 124). Had the father died
before the wife and left the son living, the son's relations in
equal degree, both upon the side of the father and mother,
would take upon the son's death (Art. 93, sec. 130); but,
had son and father both survived and then the son died, the
father surviving the son would be entitled to the whole
estate. (Art. 93, sec. 126). And no matter who would be
entitled to the estate, this could only be derived through
administration upon the proper estate. *Rockwell* v. *Young*,
60 Md. 566. This is a matter of importance to be estab-
lished in order to fix the person upon whose estate admin-
istration must be granted and through which title must be
derived and by whom the administrator of Catharine Kroll
shall be released.

3. *Plaintiffs' Theory.* The only theory upon which the
plaintiffs could have the relief asked by their bill, would
have to rest upon the facts that both the husband and son
predeceased the intestate, Catharine Kroll. *She died in
1888.* The evidence does not establish the death of both
or either the father or son, at any definite time in 1888; and
if any presumption is to be drawn from the fact of absence
as testified to, it would be in this case that the father had
survived the son; he having been seen in Baltimore in 1887
by his brother, and after his son by witnesses for the plain-
tiff.

PAGE, J., delivered the opinion of the Court.

In 1876, John Schaub, of Baltimore City, died leaving a last will by which he devised and bequeathed the whole of his estate to his widow for life, with remainder to be divided equally among his four children. On the death of the widow in 1887 the estate was sold by trustees, and out of the proceeds the sum of $1,010.00 was awarded to his daughter, Catharine. This daughter intermarried with one Lewis Kroll, and having had one child, John S. Kroll, died in 1888. In July of 1889, the amount awarded to Mrs. Kroll out of the proceeds of the sale of her father's estate was paid to her administrator, the defendant, who still retains it in his hands. The bill is filed by the other children and the descendants of the deceased children of John Schaub. In addition to the facts stated as above, they allege in their bill, that Lewis Kroll and John S. Kroll (the husband and child of Catharine), have been absent from the State and unheard of for more than fifteen years last past, and pray for distribution of the funds in the hands of the defendant administrator, and for such other relief as their case may require.

The defendant, Griffin, admits all of the allegations of the bill, except as to the alleged absence of Lewis and John Kroll. As to that, he denies the averment and charges they are still alive. He also avers that if it be true that they are dead, he cannot pay over the fund except to the administrator of John or Lewis Kroll, and none such have been appointed; that the final distribution must depend on the fact whether Lewis Kroll predeceased or survived his son; and in the latter event, the complainants would have no interest in the fund except in the event of both having predeceased Catherine Kroll. He further alleges that the complainants have no title to the fund on the facts set out in the bill; and if they have, they have a full remedy at law; all of which he prays he may have the full benefit of, as if it had been made by demurrer. An order of publication in the manner and form required by the statute was granted by the Court, notifying John Kroll, Lewis Kroll and their

unknown heirs to appear and answer, and upon their failure to do so a decree *pro confesso* was entered against them.

We think there can be no question as to the authority of the Court to entertain such a case as is made by the bill. It is well-settled that a distributee may support a bill in equity against an administrator for a share in the intestate's estate. *Alexander et al.* v. *Leakin, &c.*, 72 Md. 205. And if it be found that John Kroll is dead, it is equally clear that distribution must be made to those who are his representatives. Code, Art. 93, sec. 132.

The rights of the parties are to be determined by the application of the provisions of the Code to the facts established by the proof. If Lewis Kroll and his son both survived Catherine Kroll, she having died intestate, her husband, Lewis, would take a life estate (Art. 45, sec. 2) with a vested remainder in the son. (Art. 93, sec. 124). In that event, if the son died leaving no descendants before his father, the father would take the whole. Art. 93, sec. 126.

After a careful scrutiny of the proof, as set forth in the record, and the law applicable, we are of opinion it must be held that both father and son survived Catherine Kroll. It appears to be well-settled that absence, unexplained and without having been heard of, for the space of seven years affords a legal presumption of death. Mere lapse of time is not sufficient, but the case is different if there is proof that the person has never been heard of by any of his family or has never communicated with them. *Shriver* v. *State*, 65 Md. 286; *Tilly* v. *Tilly*, 2 Bland, 444. The general rule is thus stated in *Best on Evidence*, vol. 2, sec. 409: "When a person goes abroad and has not been heard of for a long time, the presumption of life ceases at the expiration of seven years from the period he was last heard of" (see authorities there cited). It is believed this doctrine has been generally concurred in by the Courts of this country and of England. We cite some of the cases. *Wentworth* v. *Wentworth*, 71 Me. 74; *Flynn* v. *Coffee*, 12 Allen, 133; *Smith* v. *Knowlton*, 11 N. H. 196; *Eagle* v. *Emmett*, 4 Bradford (N. Y.) 120;

*Rosenthal* v. *Mayhugh*, 33 Ohio St. 164 ; *Jamison* v. *Smith*, 35 La. Ann. 613; *Crawford* v. *Elliott*, 1 Houst. (Del.) 465 ; *Shawn* v. *McMackin*, 9 Lea (Tenn.) 601 ; *Bodwitch* v. *Jordan*, 131 Mass. 321 ; *Doe* v. *Jesson*, 6 East. 80 ; *Doe* v. *Nepean*, 5 B. & Ad. 86 ; 1 *Am. Eng. Ency. of Law* (1st ed.), title, " Absence."

But while there is such a presumption of the death of a party, there arises therefrom no presumption of the time thereof, and therefore if it be required to establish the precise period of death, it must be done by evidence. *Davie* v. *Briggs*, 97 U. S. 634, and authorities cited *supra*. It does not follow, however, from this fact that there may not be a presumption of the continuance of life during the waiting period. Indeed it seems difficult to state any sufficient reason, why, a person shown to be alive, at any particular period of time, should not be presumed 'to continue to live, until there is proof from which the fact of death can be found, or the legal presumption of death arises. That such a presumption does not arise until the seven years have expired carries with it, in the total absence of proof, the presumption of life until that period has elapsed. When, therefore, a person is shown to be alive the burden of proof to establish his death must always rest upon him who alleges it. The unexplained absence for seven years, is proof, which the law for wise purposes constitutes a *prima facie* case ; but either this *prima facie* case or other proof must exist before the burden of proving continuance of life, of one who when last heard of was alive, shall be shifted from him who alleges the death of such an one. " When, therefore, the existence of a person, a personal relation or a state of things is once established by proof the law presumes that the person or relation or state of things continues to exist as before, until the contrary is shown or until a different presumption is raised from the nature of the subject in question." 1 *Greenleaf on Evidence*, sec. 41. See note 2 and authorities there cited.

In *Montgomery* v. *Bevans*, 1 Sawyer, 666, JUDGE FIELD

said : " The law presumes that a person who has not been heard of for seven years is dead, but  *  *  presumes that a party once shown to be alive continues alive, until his death is presumed to have occurred, that is at the end of seven years.  And the presumption of life is received, in the absence of any countervailing testimony, as conclusive of the fact, establishing it for the purpose of determining the rights of parties as fully as the most positive proof.  The only exception to the operation of this presumption is when it conflicts with the presumption of innocence, in which case the latter prevails." 2 *Best on Ev.,* sec. 409 ; *Eagle* v. *Emmett (supra)* and authorities cited (*supra*).

From the evidence submitted to us it is difficult to determine with precision the time when Kroll and his son disappeared.  None of the witnesses are at all exact.  They estimate rather loosely the time from the date at which their testimony was taken, that is from July, 1895.  The two Fields and Schaub think they went away " about fourteen or fifteen years ago."  Happal says Kroll worked for him fourteen or fifteen years ago, and they disappeared one year thereafter.  Kuhn said Kroll worked for Happal thirteen years ago ; Roemer thinks they have been absent thirteen or fourteen years ; Mrs. Schmidt thought they had been gone certainly ten and possibly fourteen years ; and Dreusche fixes the period after her father's death, which occurred fourteen years back.  Two witnesses produced by the defendant, testified they had seen him about eight or nine years ago.  It is impossible from this evidence to place their absence further back than 1881, if indeed so far as that, for there are matters appearing in the evidence that might possibly justify us in fixing even a later date.  However that may be, if it be determined they disappeared sometime in 1881, it is impossible to find that the full period of seven years, the period necessary to the presumption of death, had elapsed at the time of the death of Catharine Kroll sometime in 1888, and this being so the presumption that both father and son were then alive, must prevail.  It

follows from this view, that on the death of Catharine, the property passed to the father for life, and the remainder was vested in the son.

The defendant contends that the proof establishes the fact that Lewis Kroll was seen in Baltimore in 1886 or 1887, and from this there ought to arise a presumption of the survivorship of the father. But the testimony of William Kroll and Carrie Kaufman, who alone testify on this point, is very unsatisfactory. Kaufman states she saw him, but had no conversation with him. She says she saw him on the corner of Durham and Lombard streets, about eight or nine years ago : and after this momentary glance she sees or hears of him no more. William Kroll states he met Lewis in Baltimore about eight years ago and walked with him ; but he can give none of the conversation had with him, except that his brother said he had no work and would leave. There was no information whither he was going or whence he came. From out of the unknown he crossed his brother's path and then disappeared, to be heard of no more. Testimony so meagre and vague is not sufficient to outweigh the concurrent statements of all the other witnesses in the case. But even if this were otherwise, no presumption of survivorship can arise from the mere fact that the father was heard from at a time later than that of the disappearance of the son. In 1886 and in 1887, as has been stated, both were presumably alive—the seven years necessary for the presumption of death not having elapsed in the case of either. The son cannot be presumed to be dead until the end of 1888 ; so that, if the father were alive in 1886 or 1887, there was a period of one or two years in which either may have died. But whether either or both or neither died during this period, there are no means of determining. It seems clear, there is an entire absence of proof tending to establish the survivorship of either. The remainder therefore never passed to the father, and the life interest terminated at his death. The fund ought to be distributed as having been the property of the son, and he being presumably dead his legal representatives are entitled to receive it.

These views in no wise offend the rule that no one can be deprived of his property without due process of law. The right to have distribution is based on the existence of proof, from which the presumption of death must be inferred. But this presumption is one of fact and may be rebutted. There are many cases, not necessary to be cited here, where the Courts have been called upon to adjudicate the rights of persons who have returned after their property has been distributed, upon proof that raised the presumption of their death. How far Kroll or his son would be precluded from recovering his property, should either return hereafter, is not now before us and is a question on which we must be understood as expressing no opinion. But we are clearly of the opinion that the mandates of a Court of competent authority acting within its jurisdiction would be ample to protect any who may be called upon to act in accordance therewith.

We have thus expressed our views because of the desire expressed by the counsel who argued the case, as well as because the questions were directly presented by record. But we do not think the complainants can maintain this bill, even though it be assumed they may eventually be entitled to a portion of the fund. In this State title to the personal property of an intestate can pass only through the medium of an administration. *Rockwell* v. *Young*, 60 Md. 566. An administration on the estate of John S. Kroll is therefore necessary. It is fully within the power of the Orphans' Court to adjudicate on the time and place of the death of a person, and when it has done so its judgment is final and conclusive. *Raborg* v. *Hammond*, 2 H. & G. 50. The administrator so appointed will be entitled to have distribution of the fund in the hands of the appellee, and when he shall have received it, it will be his duty to make distribution among those who are entitled according to the Code, as the next of kin of John S. Kroll. For these reasons the decree must be affirmed.

*Decree affirmed.*

(Decided January 5th, 1897).