# COURT OF COMMON PLEAS OF BALTIMORE CITY.

Filed January 2, 1923.

NASH
VS.
THE BROTHERHOOD.

*S. Ralph Warnken* and *J. Edgar Gans* for plaintiff.

*Albert J. Fleischman* and *Mortimer Kremer* for defendant.

DUFFY, J.—

This is a suit by the beneficiary on a certificate of insurance issued by defendant to Frank Nash on July 29, 1907.

Suit was filed September 10, 1918. The first trial began November 12, 1919. It resulted in a verdict for the plaintiff for $1,500. A motion for new trial was filed and the verdict was set aside. The second trial began May 31, 1921; it ended in a verdict for defendant by instruction of the Court. A

motion for new trial was filed by the plaintiff and this verdict was set aside. The third trial began September 18, 1922; it resulted in a verdict for the plaintiff for $2,220, and now the case is before me on motion of defendant to set this verdict aside.

The third amended declaration, filed March 29, 1919, contained three counts; to it the defendant pleaded the general issue pleas and a plea of limitations. A demurrer to this third plea had been sustained on May 3, 1919, with leave to amend, but no amendment was filed. During the course of the trial a fourth count was added to the declaration setting up a waiver by defendant. The defendant asked for delay to file pleadings, but this was refused. He demurred to the fourth count. This was overruled. He was then required to renew his general issue pleas to this count and opportunity to file other pleas was denied him, the Court assuring him that any defense he had to offer would be permitted under his general issue pleas. This was done to avoid delay because there was not sufficient difference between the third count on which issue had been joined and the fourth count to have taken defendant by surprise. All of the evidence offered by the defendant was admissible under his general issue pleas. For the scope of these pleas in insurance cases see 113 Md. 438—Citizens' Insurance Co. vs. Conowingo Co.

The Grand Lodge, the defendant, is located in Cleveland. It operates in Maryland through a local lodge, Patapsco No. 432. The insurance certificate is issued to members by the Grand Lodge through the local lodge. The member pays to the local lodge dues of the local lodge and joint board dues and the assessments on his certificate which are sent by the local to the Grand Lodge (Record, 52, 53).

Nash had been a locomotive engineer and had been discharged for drunkenness. He then took up laboring work for contractors. He seems to have lived on good terms with his wife and wrote to her when he was away. On August 7, 1913, he had been out of work for about a week; and on that day he left home in Brunswick, Md., to get work, as he had done several times before. His wife has never seen or heard of him since. A witness,

Tucker, a railroad conductor, who had worked with him, testified that he saw Nash on a train about Christmas time in 1914. He said, "Hello, Nash!" and the party addressed said, "How are you?" and pulled his hat down over his face. No other conversation occurred. Tucker testified that he identified this person as Nash. On July 7, 1914, his wife had the keeper of the morgue exhume a body which had been buried in Potter's Field, and she testified that when she saw it, she it once identified it as that of her husband.

It appears from the testimony and was admitted by counsel that the local lodge paid Nash's dues for a period of between three and four years ending April 19, 1917 (Record, 253 and 260). This would make these payments begin back in 1914, so that Nash's dues were fully paid up to that date, and after the Stahlman letter of March 23, 1917, hereafter mentioned.

If the jury believed that it was Nash's body exhumed in Potter's Field, and that information of that fact was given to a proper officer of the local lodge, then knowledge of the fact of death must be imputed to the local lodge, and if the local lodge was the agent of the Grand Lodge, constructive knowledge of this fact must be imputed to the Grand Lodge. I have been referred to no case in which the insurer voluntarily assumed the responsibility of keeping the policy alive after receiving notice from the beneficiary that the insured was dead; or at least sufficient notice to put the insurer which was keeping the certificate alive by payment of dues, upon inquiry as to whether the insured was dead or not.

It is true the assumption of these payments by the local lodge was voluntary, but it was assumed and continued for over three years and then was arbitrarily stopped; and the reason for stopping, given in the letters of January 9 and March 23, 1917, was as follows:

South Baltimore, Md.,

January 9, 1917.

Mrs. F. Nash,
Brunswick, Md.

Mrs. Nash: This is to advise you that this Lodge, Patapsco 432, B. L. F & E., will no longer hold Bro. Nash in good standing for dues on account of the Constitution forbids of paying out any more claims for disappearance of member without there is positive proof of death, so let me hear from you what you are going to do in regard to this.

Yours Frat.,

T. C. Stahlman, Fin. Sec.,
102 W. Fourth Ave.,
Balto., Md.

Baltimore, Md.,
March 23, 1917.
Mrs. F. Nash,
Brunswick, Md.

Mrs. Nash: This is to advise you that Mr. Nash has been expelled for his dues acording to Art. 12, Sec. 19, of the constitution. If you want him readmitted let me hear from you. I will write Sec. 19 to you as follows:

A liability arising from the disappearance of member, or the presumption of the death of a member arising from any such disappearence shall not be incurred by the Brotherhood. The Brotherhood shall only be liable for the payment of a death claim when there is positive proof of the death of a beneficiary member.

So if you want me to continue to keep up these dues of Bro. Nash let me hear from you by the 28th of this said month.

Yours Frat.,

E. C. Stahlman, Sec.

These letters were writen by Mr. Stahlman, financial secretary of the local lodge. But Mr. Pennell, recording secretary, did more than this, according to Mrs. Nash.

Pages 125-126 of Record:

Q. After you received that letter, didn't you write to them and say that you would pay his dues?

A. Yes, sir; I did. I seen Mr. Pennell on March after that letter was written, and Mr. Pennell told me that I could keep them dues up, but if it wasn't proven that Mr. Nash was dead, I never would get nothing, I could keep them up year after year. He told me that.

(The Court) Now who is Pennell?

(The Witness) That gentleman siting there (indicating).

(Mr. Fleischman) Pennell is the recording secretary, I think, is his office in the local lodge?

(The Court) All right, go ahead.

Q. So that you understood, according to that, that no matter whether you paid dues or not, unless you proved Mr. Nash was dead, the Brotherhood would never entertain your claim?

A. Yes, sir.

Q. You understood that?

A. Yes, sir.

Now here we have the local lodge acting through these two secretaries in 1917, first writing her that the payments would be discontinued and then notifying her that if she continued the payments, she would never get her money unless she proved that Nash was dead and this means that degree of "positive proof of death" as required by Section 19 of the Constitution.

It will be noted that the stand taken by the local lodge in 1917 was entirely different from that taken in 1914. According to her statement (Record, p. 143, 145, 147, 149), she says that after she had had the body exhumed in August, 1914, she saw Mr. May, the chairman of the local lodge, and tried to get him to have the body exhumed again and viewed by some member of the lodge—to see if he could identify it as she had done so that she could get the insurance money. Apparently Mr. May declined to do it, but told her that Mr. Tucker had said that he had seen Nash on the train (p. 135); and that if she would wait seven years, she would get the money. The fact that these dues were actually paid for over three years by the local lodge corroborates, to some extent, her statement that May told her that if she would wait seven years she would get her money.

The constitution provides (Section 18) that suit must be brought within six months after final rejection of the claim by the highest tribunal of the Brotherhood and Mr. May testified that neither the grand nor the local lodge had ever rejected plaintiff's claim (Record, pp. 8 and 204).

This statement of Mr. May is a mere sophistry when we consider the facts above recited. It is no doubt true that there has been no formal rejection of the claim by either lodge. But we must not lose sight of what was done to defeat this claim and the determined resistance in this suit in the last four years.

Bear in mind that the reason given in the two letters for discontinuing the payment of dues by the local lodge was not because of some new provision of the constitution or any new condition which made a change of position necessary; but because of Section 19, though this provision was in the constitution at the time the certificate was issued; and that the letter of March 23, notified her that Nash had been expelled "for his dues" although the dues were not in default at that time and did not become so until April 19; and that was in March that Pennell had the above-recited conversation with her, after which she failed to keep up the payments which, in her letters of January 14 and 15, 1917, she said she intended to keep up. Does not this dealing show that these officers of the local lodge intended to get rid of this liability which the lodge had been carrying for three years past? And they did it by inducing Mrs. Nash to believe that to pay any more dues and assessments would be futile for the reason that she could not produce that positive proof of death required by Section 19.

Here it will be well to consider the language used in Fidelity Company vs. Dulany, 123 Md. 495:

Provisions relating to proofs of loss are, as has been stated, inserted in the policy for the exclusive benefit of the insurer, in order that it may be informed of the nature, character and extent of the loss, and while the insurer may stand on its contract and an exact compliance with its terms, there is no reason why these provisions may not be waived by it. The business in which insurance companies are engaged is one in which the security and protection of the insured are largely intrusted to the honesty and fairness of the insurer, and this Court has frequently said that honesty and good faith demands of them "frank and open dealing with their policy holders." Any acts or conduct of the insurer, or its representatives, that are, under the circumstances, calculated to mislead the insured and to induce him to believe that the performance of the condition will not be required, or that proofs of loss would be ineffectual and

nugatory, will, if he is thereby misled, amount to a waiver.

Keith vs. Modern Woodmen, 167 Iowa, 243, is a case in point. In this case the by-laws contained a provision obligating certificate holders to abide by after-enacted by-laws. One similar to Section 19 was enacted after the absence of the insured began. By a letter of the defendant the plaintiff was induced to pay assessments for seven years if she believed her husband dead. She paid assessments both before and after said by-law was enacted, supposing that the certificate would be in force and defendant continued to receive such payments. Held : "Good conscience requires that defendant not be allowed to now say that it is not liable on this claim."

In the foregoing statement, I have assumed the truth of Mrs. Nash's testimony for the purpose of this motion, although the testimony of other witnesses conflict with it on important points. She made a credible witness, I think, and two juries have believed her.

I hold that the local lodge is the agent of the Grand Lodge because of the relations the evidence shows existed between them, in spite of Section 13 of Article 29, on the authority of Schlosser vs. Grand Lodge of Railroad Trainmen, 94 Md. 362, in which the Court was dealing with a kindred organization and a similar situation.

In a case in which the relations between the Grand Lodge, the local lodge and the beneficiary were somewhat analogous to the relations between the same parties in the pending case, it is said :

Where a beneficial association authorizes one of its subordinate branches to collect dues, to be forwarded to it, the branch becomes the agent of the association for that purpose, and if it by its uniform course of dealing with members of the association liable to pay dues, leads the members to believe that neglect to make prompt payments, according to the strict terms of their contract, will not result in a forfeiture of it, and the branch by resolution agreeing to and in pursuance thereof does advance out of its own funds, to the association, dues of a member for one month, which he repays the branch

according to the customary course of collections, no forfeiture arises. Peterson vs. Sovereign, etc., 117 Atlantic Rv. 601.

The case for the defense turns mainly on Section 19 of the Constitution (Edition of 1917) :

Section 19. A liability arising from the disappearance of a member, or the presumption of the death of a member arising from any such disappearance shall not be incurred by the Brotherhood. The Brotherhood shall only be liable for the payment of a death claim when there is positive proof of the death of a beneficiary member.

What is the meaning of "positive proof" of death? Light is thrown on the question by Section 15-C, which provides among other things that upon the death of a member "affidavits of at least two reputable witnesses shall be filed with the general secretary and treasurer which prove the death of the member." At least one of the sworn proofs of death shall positively identify the deceased whose claim is filed, as being a member of the Brotherhood."

According to the rules of evidence prevailing in this State, Nash was presumed to be dead when seven years had elapsed from the time he was last heard from whether that period began to run when he disappeared in July, 1913, or from the time Tucker saw him on the train in 1914, if Nash was the man really seen by Tucker. This full period had elapsed in 1920 or 1921. There is no presumption, however, as to when during that period Nash died. Schaub vs. Griffin, 84 Md. 563.

But the time of death can be found by the jury from the circumstances disclosed by the evidence if those circumstances are such as to make it improbable that he would have abandoned his home and family. 17 C. J. 1169 ; 31 Idaho, 556—Gafney vs. Royal Neighbours.

In my opinion, this section is unreasonable and contrary to public policy and void.

(1) It excludes proof of death by circumstantial evidence.

(2) It does not change the terminus of the seven-year period to another point of time, for example, the expiration of the member's expectancy of life according to accepted mortality tables

as in Steen vs. Modern Woodmen, 296 Ill. 104.

(3) It does not require the disappearing member to send his new location and address to the secretary of the order as in the Vitzhum case in 128 Md. 525.

(4) It not only abolishes the seven-year absence rule of evidence, but it requires the affidavit of some one that the deceased person on whose death, claim is filed, *is* a member of the Brotherhood. The way this operates in practice is shown by the letter of Mr. Pennell to plaintiff's counsel dated May 15, 1918, in which he says:

"We never knew where a claim was paid without truthful proof of him being dead and must be verified by a member in good standing, who reports of viewing this dead brother to the officers of the said lodge."

In the pending case and perhaps in almost all other disappearance cases this quantum of proof of death is impossible.

If this section is to be upheld it can only be by giving it a more liberal construction than the language used apparently admits of. There are cases which hold that "Direct and positive proof" does not require proof of death to be by eye-witnesses nor does such provision exclude circumstantial and presumptive evidence. 1 A. & E. Encyclopedia of Law, 330; A. & E. Encyclopedia of Law, 110, Note 4.

But even if this be the proper construction of this section the fact remains that the officers of the local lodge in dealing with the plaintiff did not so construe it and it is clear that whether it is void or has been too narrowly construed, the effect is the same on the plaintiff's rights.

For these reasons the motion for a new trial will be overruled.

The motion in arrest of judgment must be overruled because it was not necessary to re-swear the jury when the declaration was amended by adding the fourth count during the course of the trial. Poe's Practice, Sec. 188; Adams Express Co. vs. Trego 35 Md. 61.

Furthermore, the defendant's counsel was at the trial table at the time the amendment was made and made no request to have the jury re-sworn.