JEDEDIAH SPRAGUE v. THE ESTATE OF PHILIP SPRAGUE.

*Contract. Statute of limitations. Interest.*

A father conveyed his farm to his son, conditioned for the support of himself and his then wife, the mother of the grantee, during each of their lives. After the death of the grantee's mother, the father married again, and upon the son's objecting to support the second wife under the contract, the father told him to bring in his claim for her support against the father's estate after his death; whereupon the son did support her until his father's death. *Held*, that from these facts, the auditor was justified in finding a contract by the father to pay, after his death, to the son the expenses of the support of the second wife up to that time.

*Held*, also, that as by the terms of this contract, the son had no right of action to enforce payment for the support of his step-mother during his father's life, the administrator of the latter's estate could not rely upon the statute of limitations, as a bar to any part of the son's claim, on account of the lapse of time before the father's death.

Sprague v. Sprague's Estate.

*Held,* also, that as *matter of law* the son was not entitled to recover interest upon this claim against his father's estate.

Under the original contract for the support of his parents, the son, during his his mother's life, furnished his father with twenty fleeces of wool yearly, but after her death, he informed his father that he ought not to have but half that quantity, to which the father replied that "he wanted twenty fleeces a year while he lived; that he should not live long;" after which the son furnished him with twenty fleeces yearly during his life. *Held,* that by these facts a legal personal liability was not necessarily created on the part of the father to pay for the extra ten fleeces; but that it was purely a question of fact for the auditor to find, whether they were furnished solely under the original contract, for the father's support, or under a new contract upon the father's personal responsibility.

BOOK ACCOUNT, being an appeal from the decision of the commissioners upon the intestate's estate. The auditor reported that at the hearing before him, the plaintiff gave in evidence a deed from the intestate to him, dated December 22, 1828, of the intestate's farm, conditioned in the following words : "that if the said Jedediah Sprague shall, as he has for three years past, live with and assist in providing for us (the said Philip and Clarissa his wife), and also for Clarissa, our daughter, the term of the natural lives of me, the said Philip, and Clarissa, my wife, then the above promises and conveyance by me made, are to be in full force and virtue. And I hereby covenant for myself, administrators and executors, that the said Jedediah Sprague shall come into, remain and be in full possession of all said above premises at the decease of myself, the said Philip, and Clarissa, my wife."

The plaintiff's account was for ten fleeces of wool per year, from 1831 to 1855, inclusive, which were charged at ten dollars per year ; and also for twenty-six dollars per year, from 1833 to 1856, inclusive, for furnishing provisions, etc., for the intestate's second wife, Olive. The account also contained an item of interest, being the aggregate of the interest on all the above items, computed from the end of each year when the charges respectively accrued.

The auditor found the following facts : that during the three years immediately preceding the date of the above mentioned deed, the plaintiff had lived on the farm thereby conveyed with the intestate and his wife Clarissa, who were his father and mother, and had taken care of them, and had furnished them all *they needed*

from the produce raised on the farm, but not groceries or other things not produced on the farm. During this time, the plaintiff furnished his mother what wool she wanted to use; that after the execution and delivery of the deed, the plaintiff lived with, and provided for the intestate and his wife Clarissa, in the same manner as before, until the death of Clarissa, which took place May 6th, 1831; that after her death the intestate lived with the plaintiff and was provided for by him as before, until the intestate married a second wife, in March, 1832, and brought her home with him, where she lived with the intestate in the same house with the plaintiff, until the intestate's death, March 31st, 1856; that from the time of the intestate's second marriage until his death, both he and his wife were provided by the plaintiff with all they needed and used of the produce of the farm.

The auditor also found in relation to the charges in the plaintiff's account for provisions, etc., for the intestate's second wife, that after the intestate's second marriage, the plaintiff told him that he was under no obligation to support or provide anything for his father's second wife, and claimed that that he ought to be paid for whatever he furnished her; that the intestate, in reply, told the plaintiff to carry in his claim for the support of his second wife, against the intestate's estate after his death, and that conversation substantially like this passed between the plaintiff and the intestate every year after the second marriage except the last two years of the intestate's life; and that the plaintiff, always after his first conversation on this subject with his father, expected that his claim for the support of the intestate's second wife would be paid out of his father's estate. From these facts the auditor found a contract between the plaintiff and the intestate, that the former should be paid for the support of his step-mother after the intestate's death, and accordingly allowed the plaintiff's charges for the support of his father's second wife, which he found to be reasonable in amount, together with interest on each of them from the end of each year.

In reference to the plaintiff's charges for the wool, the auditor found that from the time of the execution and delivery of the deed above mentioned, until the death of the plaintiff's mother Clarissa, the plaintiff furnished the intestate with twenty fleeces of wool each year; that after Clarissa's death, the plaintiff told the intestate

that he ought not to have more than ten fleeces of wool per year, or half as much as he had while his wife Clarissa was living; that the intestate replied "that he wanted twenty fleeces a year while he lived; that he should not live long;" that the plaintiff furnished twenty fleeces a year to the intestate until he died; that the intestate sold some of the wool furnished him by the plaintiff, after his first wife's death, and that the wool was worth the price charged for it in the plaintiff's account. Upon these facts the auditor referred the question of the liability of the intestate's estate to the plaintiff for the wool, to the decision of the county court.

The defendant insisted before the auditor, that all of the plaintiff's account, which accrued more than six years before the intestate's death, was barred by the statute of limitations, but this objection was overruled by the auditor.

The county court, at the May Term, 1857,—UNDERWOOD, J., presiding,—accepted the auditor's report and rendered judgment for the plaintiff for all the items in the plaintiff's account, except the charges for wool, which were disallowed. The court also allowed the plaintiff to recover interest upon each of the items in his account, except the charges for wool, from the end of the year in which they respectively accrued.

To the disallowance of the charges for the wool the plaintiff excepted, and to the allowance of interest the defendant excepted.

*A. Tracy* and *Washburn & Marsh*, for the plaintiff.

*R. C. Lund* and *Converse & French*, for the defendant.

1 As to the charges for the support of Philip Sprague's second wife.

It is assumed by the plaintiff, that by the terms of his deed he was under no obligation to support her. If he was not, the fact that the said Philip brought her to the plaintiff's house, and that the plaintiff claimed pay for her support, and that said Philip told the plaintiff "*to carry in his claim against his (said Philip's) estate after his decease, for the support he furnished or should furnish his said second wife*," would seem to make a contract *by implication* to pay for her support. But by the well established rules of law, he pay for thus providing for her support was due when furnished.

There was no express contract between the parties. If the law would imply a contract from what did take place, it would be a contract payable *in presenti* and not *in futuro*; 2 Parsons on Contracts 47.

The fact that the said Philip requested the plaintiff to present his claim *against his estate*, does not make out that the plaintiff had no right to claim and exact pay of said Philip previous to his decease. The plaintiff did not agree to wait till his death for his pay. On the implied contract raised by the facts, we think the plaintiff had right to exact pay of said Philip in his life time.

If it is claimed that the finding of the auditor is, that the contract was not *due and payable* till after said Philip's decease, we say that such a finding is not warranted by the facts. *All the facts are fully reported,* and the facts being found, what contract is thereby created is a question of law; 2 Parsons on Contracts 365; *Wason* v. *Rowe,* 16 Vt. 525.

If we are right in the construction of this contract, all that part of this account prior to 1850, is barred by the statute of limitations.

2. If the plaintiff's construction of this contract is correct, and it was not due and payable till after said Philip's decease, then, most clearly, the plaintiff can recover no interest on it. It is a general principle that unless interest is payable by the terms of a contract, it does not draw interest until it becomes due and payable; *Abbott* v. *Wilmot,* 22 Vt. 437; *Porter* v. *Munger, ib.* 191; *Raymond* v. *Adm'r. of Isham,* 8 Vt. 258; *Newell* v. *Ex'rs. of Keith,* 11 Vt. 214, 219; *Evarts* v. *Nason's Est., ib.* 122, 127.

1. The court was clearly right in disallowing the items for wool. *There was no express or implied promise to pay for it.* After the death of said Philip's first wife, the plaintiff claimed that he ought not to furnish but ten fleeces yearly, and the said Philip replied that "*he wanted twenty fleeces a year while he lived; that he should not live long.*" This was all that was ever said between the parties upon the subject.

2. No part of the wool can be charged towards said Olive's support, as it was not shown that any part went towards her support. The report finds "*that said Philip sold some of that furnished after said Clarissa's death;*" but what part he thus sold, and what became of the balance, the report does not state.

The opinion of the court was delivered by

BENNETT. J.   We apprehend that there is no ground to claim that Jedediah Sprague was bound to maintain the second wife of the intestate under his contract, and the condition in the intestate's deed to him.   The condition of the deed simply required the plaintiff " to live with, and assist in providing for the intestate and Clarissa, his wife, and their daughter Clarissa, as he had done for the three years then passed, during the natural lives of the intestate, and Clarissa, his wife;" and upon the performance of the condition, the plaintiff was to come into the possession of the farm upon the decease of the intestate, and his wife Clarissa.   The case before us does not involve any question relative to the maintenance of the intestate, and Clarissa, his wife, or the daughter.   But the case shows that in May, 1831, the intestate's first wife died, and in March, 1832, he married a second wife, and it is in relation to her support that the questions arise.   It is perfectly clear that the plaintiff must rely for a recovery upon matter *aliunde* the original contract, and it is in fact upon such matter that he rests his claim. The case shows that after the intestate was married to his second wife, and brought her home, the plaintiff told him that he was under no obligation to provide a support for his second wife, and claimed that he ought to be paid for whatever he furnished and provided for her ; and thereupon the intestate told him " to carry in his claim against his estate, after his decease, for the support he had furnished or should furnish his second wife, and it seems the plaintiff went on and furnished the support.   It is obvious that neither party treated what was furnished for the support of the second wife as being furnished under the original contract, and we think the auditor might well find, from the evidence, the contract which he does, that is " a contract between the plaintiff and the intestate, that the plaintiff should be paid out of the estate of the intestate, after his decease, for the support furnished for his second wife."

As by the terms of the contract the plaintiff could have no right of action to enforce payment in the life time of the intestate, it is manifest that the administrator can not rely upon the statute as a bar to any part of the plaintiff's claim for furnishing provision, etc. for the second wife of the intestate, and the auditor has found the charges were reasonable, and we see no reason why the plain-

tiff is not entitled to recover for all those items in his account.

In regard to the plaintiff's claim for the wool, the report of the auditor seems to put that upon somewhat different ground. It appears that so long as the intestate's first wife lived, the plaintiff, after the execution of the deed, furnished the intestate twenty fleeces of wool annually, and that after the death of the intestate's first wife, the plaintiff told the intestate that he ought not to have more than ten fleeces a year, half as much as he had while his first wife lived, and that the intestate replied to this, that " he wanted twenty fleeces a year while he lived; that he should not live long;" and that the plaintiff did furnish the twenty fleeces a year to the intestate until his death. The auditor finds that the intestate sold some of the wool that was furnished to him after the death of his first wife, but how much does not appear, neither does it appear what use was made of the rest of it. The auditor says the above facts are all that was proved to have transpired between the intestate and the plaintiff respecting the wool; and the auditor refers the question to the court, whether such a state of facts entitles the plaintiff to recover for the ten fleeces of wool. The case shows that the plaintiff had lived with the intestate, his father, for three years prior to the execution of the deed, and had carried on his farm, and had taken care of his father and mother, and furnished them all they needed from the produce raised on the farm, but not groceries or other things not produced on the farm; and the report says he also, during the three years, furnished what wool his mother " wanted to use." No particular quantity of wool is found to have been furnished for those three years, but it is found that the plaintiff, after the execution of the deed, did furnish to the intestate twenty fleeces of wool each year under the contract, during the life time of his mother, and no claim is made by the plaintiff for any part of that wool. To give the plaintiff a right to recover for any portion of the wool furnished after the intermarriage of the intestate with his second wife, it must have been furnished under such a state of facts as to create a personal liability, and it must have been so intended by the parties at the time. If it was furnished by the plaintiff under the contract, though he did not consider that the contract required him, after the death of his mother, to furnish any more than ten fleeces a year, yet he could not, in such a case, make

a legal charge against his father. It would not have been furnished as creating a debt, but rather as a gratuity.

When the plaintiff after the death of his mother, told his father that he ought to have only one-half as much wool as he had while his mother lived, the reply simply was, " he wanted twenty fleeces a year while he lived ; he should not live long." Though the precise time of this conversation is not found, yet from the fact that the plaintiff has charged on his account, ten fleeces in July, 1831, and ten fleeces in July, 1832, it was, most likely, before the intermarriage of the intestate with his second wife. This reply does not indicate that the old gentleman expected that his estate was to be charged with the ten fleeces of wool a year.

When the son, alluding to the contract, tells his father that he ought to have but half as much wool as he had while his mother lived, he says " I want twenty fleeces a year while I live, and I shall not live long."

This seems very much like a repudiation by the father of the ground taken by the son, and certainly, as matter of law, we can not say that upon such a finding, a legal personal liability was created against the father or his estate.

It is purely a question of fact, for the auditor to settle whether the ten fleeces of wool, from year to year, were treated by the parties as being furnished under the contract, or upon the personal liability of the intestate. We can not say, as matter of law, that upon the facts found, there was error in the county court in rejecting this part of the plaintiff's claim.

The more important question in the case relates to the plaintiff's claim for interest on his account. The auditor finds that the plaintiff was to be paid for the support of the second wife of the intestate out of his estate, after his decease.

It was no part of the agreement, as found by the auditor, that the intestate should pay interest on the account, and there was no wrongful detention of the debt by the intestate in his life time, so as to give a right to claim interest as damages, for the reason that it was not due.

There is nothing found in this case by the auditor, as to the agreement or expectation of the parties on the subject of interest, and the nature of the case is one that would not seem to admit of

Sprague *v.* Sprague's Estate.

any known custom to pay interest, and none was attempted to be proved before the auditor. Where there is a known custom or usage to charge or claim interest, the parties may be supposed to have adopted the usage as one of the terms of their dealing, and it was upon that ground the court went in allowing interest in the case of *Raymond* v. *Johnson*, 8 Vt. 258, on the semi-annual balances of the account. No facts or reasons are given in the report for the allowance of interest, and it may seem that the auditor may have gone upon the ground that the account carried interest upon it, *as matter of law*, in the life time of the intestate; but this can not be, until there has been some default in payment. We can not assume a custom to pay interest in cases of this description, and we apprehend that before interest can be allowed on this account in the life time of the intestate, it should be found that it was the agreement or expectation of the parties that interest should be paid; and this is purely a question of fact for the auditor to find, and it should be made affirmatively to appear. Whether there are any sufficient grounds in the case to justify such a finding, was a matter peculiarly for the auditor.

We think then, upon this part of the case, that there was error in the county court in allowing the interest as charged.

The judgment of the county court is reversed; but instead of recommitting the report for a more distinct finding of the auditor as to the claim for interest, judgment, by the consent of the plaintiff, is to be rendered that he recover the sum reported by the auditor, with interest after the death of the intestate.