MABLE B. TYRRELL *v.* PRUDENTIAL INS. CO. OF AMERICA.

January Term, 1937.

Present: POWERS, C. J., SLACK, MOULTON, and SHERBURNE, JJ., and STURTEVANT, Supr. J.

Opinion filed May 4, 1937.

10

*Theriault and Hunt* for the defendant.

*Wilson, Carver, Davis & Keyser* for the plaintiff.

POWERS, C. J. This action is brought to recover on two life insurance policies issued by the defendant on the life of Lester M. Tyrrell, and payable to the plaintiff, then his wife. One of these, hereinafter referred to as the small policy, was dated December 28, 1925. The other, hereinafter referred to as the large policy, was dated June 23, 1924. Premium payments were defaulted on both policies. The small policy went into extended insurance on December 23, 1929, at a commuted value of $1,048, for a period expiring December 31, 1938. The large policy went into extended insurance at a commuted value of $11,140, for a period expiring September 28, 1932.

The court directed a verdict for the plaintiff on the small policy for the sum above stated. It submitted to the jury the issue raised on the large policy, and a plaintiff's verdict was returned for the sum of $12,241, which included interest on the commuted value of $1,101.

The Tyrrells were married in 1909. They lived together at various places within and without this state until the spring of 1919, when Tyrrell was arrested at Waterbury, Vt., for stealing an automobile in California. He was taken back to that state, was tried, convicted, sentenced and committed to San Quentin prison. While he was there confined, the plaintiff obtained a divorce from him in Lamoille County Court. But soon after his release from prison in 1923, the plaintiff met him in Detroit, Mich., and they were remarried. They lived together thereafter in Detroit and elsewhere until October 31, 1927. In the meantime, two children had been born to them, one in 1915, and the other in 1925. While they were living at Grosse Point, Mich., and on the date in October just mentioned, Tyrrell disappeared, and he has never been seen or heard from since.

There was evidence below tending to show that Tyrrell was a kind, thoughtful and affectionate husband and father, and that his social, financial and domestic circumstances were so satisfactory as to make it highly improbable that he would deliberately and permanently desert his home and family.

On the other hand, the facts set up and sworn to by the plaintiff in her petition for a second divorce from Tyrrell brought in Michigan and executed March 2, 1928, which facts the jury were at liberty to accept as true, together with other evidence regarding his domestic situation, his finances and his criminal and fraudulent practices, afforded evidence tending to show that he did so desert his family.

The situation presented at the trial below was such that two well-established presumptions were applicable. First, there was the presumption of the continuance of life, which, as we shall see, continued for seven years from the date of Tyrrell's disappearance; and second, there was the presumption of death, which, as we shall see, arose at the expiration of that period.

■ ■ The burden of proof was on the plaintiff, of course. In order to recover on the large policy, she was required to establish the fact that Tyrrell died while that policy was in force, that is to say, on or before September 28, 1932. In order to recover on the small policy, she only had to establish the fact that Tyrrell was dead when the suit was brought, that is to say, July 3, 1935.

Of necessity, she would be entitled to recover on the small policy, if she established her right of recovery on the large one; but obviously, the converse of this statement would not be true.

■ The defendant asked the court to require the plaintiff to elect whether she would stand upon the claim that Tyrrell died on or soon after the date of his disappearance, or upon the presumption of his death arising from his unexplained absence for a period of seven years. The court refused to comply with this request, and the defendant excepted.

■ The ruling was free from error. There were two issues before the jury. The plaintiff was entitled to the advantage she could get from any evidence she could produce that would be relevant to either issue. To prove a right of recovery on the large policy, she could avail herself of all the circumstantial evidence she could find tending to show that Tyrrell died before

that policy finally lapsed. And though she failed on that issue, she was not out of court, for on the question of liability under the small policy, the presumption of death operated in her favor, and if it was rebutted by evidence, she would be entitled to resort to such circumstantial evidence as she could produce.

■ ■ As has already appeared, the small policy was in force at the time of the trial. The seven years that Tyrrell had been absent and unheard from had then elapsed. If there had been no evidence introduced tending to show that he was alive, the granting of the plaintiff's motion for a verdict on that policy would have been warranted. The death of Tyrrell was a fact to be proved. The burden of proof was on the plaintiff, but the presumption, alone, was enough to shift the burden of evidence to the defendant and require it to go forward with evidence, direct or circumstantial, tending to show that Tyrrell was not dead as presumed by the law. This the defendant did. Though it gave no direct evidence to that effect, as we have seen, it gave evidence tending to show that his disappearance and continued absence was due to the unsatisfactory conditions hereinbefore referred to.

There was enough of such evidence to send the question to the jury, and it was error to order a plaintiff's verdict on the small policy.

■ For a very similar reason, it was not error for the court to refuse to grant the defendant's motion for a verdict on the small policy. The plaintiff's evidence tended to show that the absence of Tyrrell could not reasonably be explained on any other theory than his death.

■ While the plaintiff was giving her testimony, she was confronted with a certified copy of her divorce proceedings in Wayne County, Michigan, instituted in July, 1928. This document shows that her petition therein charged Tyrrell with "gross and extreme cruelty," with applying to her vile and opprobrious epithets, with being untrustworthy, and with other marital misdoings. This petition was signed and sworn to by the plaintiff. It also shows that the decree of divorce was granted upon testimony taken in open court, the charges made by the plaintiff being found to be true.

The plaintiff was allowed to explain that her reason for applying for this divorce was merely to get the title into her

name of certain real estate then standing in the joint names of herself and husband; and that she signed and swore to the petition without reading it or knowing its contents.

To the admission of this explanatory and exculpating evidence, the defendant excepted.

██ ██ The exception was based upon the claim that a judgment record imports absolute verity, is not subject to collateral attack, and that the plaintiff was as much estopped from denying the matters alleged in her petition as she was from denying the decree itself. The law relied upon by the defendant is sound enough. But the trouble with its position is this: Judgments conclude only the parties and their privies. The estoppel arising therefrom operates only on such parties and privies. Estoppels are reciprocal, and the bar resulting therefrom must be mutual to the parties in the later action. Bigelow, Estoppel (6th ed.), 127; 2 Herman, Estoppel, § 586. This defendant is a stranger to the divorce proceedings, and cannot invoke the estoppel against the plaintiff. For it is written that: ''Estoppel is reciprocal; for he that shall not be concluded by the record * * * shall not conclude another by it.'' *Alexander* v. *Walter*, 8 Gill (Md.) 239, 50 A. D. 688, 692, quoting Lord Coke as above; *Glasgow* v. *Baker*, 72 Mo. 441, 446; Bigelow, Estop., 364; 2 Herman, Estop., *supra; First National Bank* v. *Northwestern Bank*, 152 Ill. 296, 38 N. E. 739, 26 L. R. A. 289, 43 A. S. R. 247, 253; *Blodgett* v. *Perry*, (Mo.) 10 A. S. R. 307, 311; *Deery's Lessee* v. *Cray*, 5 Wall. (U. S.) 795, 18 L. ed. 653, 655. See *Capen's Admr.* v. *Sheldon*, 78 Vt. 39, 46, 61 Atl. 864; *Girard* v. *Vt. Mut. F. Ins. Co.*, 103 Vt. 330, 339, 154 Atl. 666.

This exception is not sustained.

The plaintiff was allowed to show what Tyrrell said about where he was going and what he was going to do the day he disappeared, what he telephoned the plaintiff about a visit from his mother, and other circumstances tending to characterize his departure from town and its purpose. The defendant excepted.

██ The fact of Tyrrell's death, as well as the date of it, of necessity, had to be shown by circumstantial evidence. As was said by Rowell, C. J., in *State* v. *Ryder*, 80 Vt. 422, 426, 68 Atl. 652, 654, ''proving things by circumstantial evidence is a process of imperfect induction, by which, from the known we infer and find the unknown. But circumstantial evidentiary facts

are too various to admit of enumeration, for they are as change-ful as the events out of which they grow. They cannot be comprehended within any rule, nor brought under any classification. Great latitude is allowed in their reception, and everything that tends to connect the supposed evidentiary fact with the *factum probandum,* is admissible to prove that fact." The competency of a collateral fact to be used as a basis of legitimate argument is not to be determined by the conclusiveness of the inferences it may afford in reference to the fact to be proved. "It is enough if it tends, even in a slight degree, to elucidate the inquiry or to assist, though remotely, to a determination probably founded in truth." *Stevenson* v. *Stewart,* 11 Pa. 307; *Holmes* v. *Goldsmith,* 147 U. S. 150, 37 L. ed. 118, 123, 13 Sup. Ct. 288. Any fact or circumstance relating to Tyrrell's character, habits, condition, affections, attachments, prosperity, and objects of life, which usually control the conduct of men, and are the motives of their actions, was, so far as it tended to characterize his disappearance or throw light on his intentions, competent evidence on the ultimate question of his death. *In re Hurlburt's Est.,* 68 Vt. 366, 368, 35 Atl. 77, 35 L. R. A. 794. The evidence admitted was calculated to bear on his intentions, and we find nothing that is outside the "great latitude" allowed in such cases.

This exception is not sustained.

 While the plaintiff was putting in her evidence, an objection was interposed, and when the court indicated that the proposed evidence would be admitted under an exception, her counsel addressed the court as follows: "May it appear of record, if the court please, that one reason for offering this, what is perhaps out of time, is the claim put on the record that this man hasn't disappeared by reason of death, and claim has been made more than once by people representing this defendant company that this woman knew where this man was."

To this statement the defendant asked for and was granted an exception.

Thereupon counsel for the plaintiff said: "If my remark is objectionable, I would like to withdraw it, if the court please, with the court's permission." To which the court replied: "There is nothing in evidence or in the opening statement of counsel that would indicate the fact you have just referred to,

Mr. Wilson. It may be withdrawn.'' There the incident closed. The offensive statement was not in terms withdrawn. The court did not admonish the jury to disregard it. It was deliberate and unprovoked. It was unwarranted and improper. It brought to the attention of the jury unproved and prejudicial matter, and, in the circumstances, amounted to reversible error. *Paul* v. *Drown,* 108 Vt. 458, 189 Atl. 144, 146.

The court charged the jury that if they found that Tyrrell died prior to September 28, 1932, the plaintiff would be entitled to recover the commuted value of the large ' policy plus six per cent interest thereon, and that such interest amounted to $1,101. To this instruction the defendant excepted on the ground that by the terms of the policy, nothing was collectable thereunder, until due proof of the death of the insured had been furnished; and that a verdict of the jury would be the first ''due proof'' of that fact. So, it was argued, no interest could be recovered, even if the policy was in force when Tyrrell died.

The law, with us, is that, in the absence of a contract concerning it, interest does not begin to run until the defendant is shown to be in default. *Brainerd* v. *Champlain Trans. Co.,* 29 Vt. 154, 156; *Sprague* v. *Sprague's Est.,* 30 Vt. 483, 491; *Evans* v. *Beckwith,* 37 Vt. 285, 289; *Grapes* v. *Rocque,* 96 Vt. 286, 290, 119 Atl. 420.

It becomes necessary, therefore, to determine when the cause of action arose on this policy.

It appeared at the trial, that on July 31, 1931, the plaintiff, on a blank furnished by the company, at the top of which appeared the words, ''Claimant's Statement of Disappearance,'' made out, swore to and filed with the company her version of Tyrrell's disappearance and the circumstances attending it. There was evidence, too, that shortly thereafter, a representative of the company came to the plaintiff at Framingham, Mass., accompanied by a stenographer, and took a further statement from her, in which she answered all questions asked her, and she testifies that she furnished all the information requested, so far as she was able. No question was ever made by the company that she had withheld any information in her possession, or that the proof of death was in any way insufficient, except that it was not proof of Tyrrell's ''actual death.'' The record shows that for practically four years, the company, with full knowledge

18

that this was a disappearance case, and that the proof held by it was all the plaintiff, according to her claim, could tell them about Tyrrell's death, failed to question the sufficiency of the proof, except as stated.

The purpose of a proof of death is to enable the insurer to form an intelligent estimate of its rights and liabilities under its policy. *Griffin* v. *Northwestern Mut. Life Ins. Co.*, 250 Mich. 185, 229 N. W. 509, 510; *Equitable Life Assur. Society* v. *Dorriety*, 229 Ala. 352, 157 So. 59, 62. The requirement for such proof is inserted in the policy for the sole benefit of the company, and can be waived by it. *Mosley* v. *Vt. Mut. F. Ins. Co.*, 55 Vt. 142, 147; *Findeisen* v. *Metropole F. Ins. Co.*, 57 Vt. 520, 524; *Grattan* v. *Metropolitan L. Ins. Co.*, 80 N. Y. 281, 36 A. R. 617. Unless fixed by the policy, there is no precise standard to which the proof must conform. The policy in hand does not necessitate direct evidence of death, or proof of "actual death," but only such evidence thereof as is reasonably available. The company must know that, in disappearance cases, the means of proof of death are necessarily limited. When, as here, a *bona fide* attempt to comply with the requirement of the policy has been made, simple fairness requires that the company should point out any defects therein if it would rely on them. *Forman* v. *New York L. Ins. Co.*, 267 Mich. 426, 255 N. W. 222, 223; *Fagerlie* v. *New York L. Ins. Co.*, 129 Or. 485, 278 Pac. 104. When such attempted proof is made out on a printed form furnished by the company, and is not objected to for want of definiteness or sufficiency, it should not lie in the mouth of the company to complain of such defects. *Gordon* v. *New England Mut. L. Ins. Co.*, 218 Iowa, 1094, 254 N. W. 287, 289; *Rinaldi* v. *Prudential Ins. Co.*, 118 Conn. 419, 172 Atl. 777, 780.

We hold, therefore, that, in the circumstances, this proof of death was sufficient in law, *Griffin* v. *Northwestern Mut. L. Ins. Co.*, *supra;* that if it was not, the company had waived further proof, *Grattan* v. *Metropolitan L. Ins. Co.*, *supra;* and that the company is not in a position to deny its sufficiency.

The very most that could here be claimed to the contrary of the last two of these propositions is that they present questions for the consideration of the jury, a point not here raised.

 It follows that the cause of action on the large policy arose a long time prior to the date fixed by the court for interest purposes. The defendant is not in a position to complain of the instruction under consideration, since it was helped rather than harmed by it.

 The question of the sufficiency of the proof of death was unquestionably for the court. *Equitable L. Assur. Soc.* v. *Dorriety*, 229 Ala. 352, 157 So. 59, 62; *Security Bank* v. *Equitable L. Assur. Soc.*, 112 Va. 462, 71 S. E. 647, Ann. Cas. 1913B, 836, 838; *Policeman's Benevolent Asso.* v. *Ryce*, 213 Ill. 9, 72 N. E. 764, 104 A. S. R. 190, 197; *Mutual L. Ins. Co.* v. *Stibbe*, 46 Md. 302, 312. The ruling that it was sufficient here, implied in the charge on the right to interest, was, as we have seen, free from error.

The court charged the jury that the plaintiff, in order to recover on the large policy, must establish the fact that Tyrrell died not later than September 28, 1932, which, it will be remembered, was the date on which that policy expired. The court called attention to the presumption that the man was dead on October 31, 1934, and added: "But there is no presumption that he was dead at any time before that date, so that the plaintiff must rely on other evidence to prove that the insured died prior to the expiration of the seven-year period and prior to September 28, 1932." So far, the court kept to the right line of the law, and the defendant had no cause to complain. But the court then went on to tell the jury that in determining whether or not the insured died prior to September 28, 1932, they "should consider the presumption that the insured was dead at the expiration of seven years from the date of his disappearance"; and that "the plaintiff in her effort to fix the time of death before September 28, 1932, has the benefit given by the law, of the presumption of death. If she were called upon to prove, unaided by the presumption, both the fact and the time of death, her task would be more difficult; but given the fact of death established, as above stated, by the presumption, she has only the comparatively easier task of fixing the time of his death."

The defendant excepted on the ground that the court having ordered a verdict on the small policy, the presumption of death had nothing to do with the case left in the hands of the

jury, so that any reference to it in the charge was improper, and on the further ground that the presumption afforded no aid to the plaintiff so far as the large policy was concerned, and the defendant's request for an instruction on that subject should have been granted. That request, which was not complied with, was as follows: "The presumption of death arising from a person's unexplained absence for seven years is not evidence of the death of the insured, Lester M. Tyrrell, and must not be treated as such evidence as to the larger policy, No. 5269554, for that policy was not in force after September 28, 1932, at which time the insured had been absent less than five years."

Let us say at the outset, that the fact the court gave a correct charge as first set forth above, would not avail to defeat an exception to a subsequent erroneous instruction. For the rule is that when inconsistent instructions are given in a charge, it will be taken that the jury have felt at liberty to follow either of them. *Farmer's Exchange* v. *Brown,* 106 Vt. 65, 69, 169 Atl. 906.

In our consideration of the question raised by the exception to the instruction referred to, we shall treat the presumption of death as it was treated at the trial, as probative in character and effect. Doubtless it should have been so treated under our previous holdings.

Whatever effect this presumption may have had on the question of liability under the small policy, it did not arise until October 31, 1934. Until that time arrived the presumption of life continued. For it is the rule, as established by the best authorities, that the presumption of life continues throughout the seven-year period, and that at the end of that period, the presumption of death takes its place. "It is a well-settled rule of law," says Chief Justice Shaw in *Loring* v. *Steineman,* 1 Metc. (Mass.) 204, 211, "that upon a person's leaving his usual home and place of residence for temporary purposes of business or pleasure, and not being heard of or known to be living, for the term of seven years, the presumption of life then ceases, and that of his death arises." To the same effect are *Whiting* v. *Nicholl,* 46 Ill. 230, 241, 92 A. D. 248; *New York Life Ins. Co.* v. *Brame,* 112 Miss. 828, 73 So. 806, L. R. A. 1918B, 86, 90; *Goodier*

v. *Mutual Life Ins. Co.*, 158 Minn. 1, 196 N. W. 662, 34 A. L. R. 1383, 1387.

 But the presumption of death which arises at the expiration of the seven years does not act retrospectively. Lawson, Presumptive Ev., 238, 260; *Martyne* v. *Curtis*, 67 Vt. 263, 265, 31 Atl. 296; *Cross* v. *Fibre Leather Co.*, 90 Vt. 397, 407, 98 Atl. 1010. As to a specific date within the seven-year period, the presumption of death has no reference and specifies nothing. So it is that, where it becomes necessary to establish such a date, the party who carries the burden of proof must establish it by evidence, wholly unaided by the presumption. Wigmore, Evidence, §§ 2491, 2531; Jones, Com. Ev., (2d ed.) § 291; Lawson, Presumpt. Ev., 251; *Hancock* v. *American L. Ins. Co.*, 62 Mo. 26, 30; *Johnson* v. *Merithew*, 80 Me. 111, 13 Atl. 132, 6 A. S. R. 162, 164; *Schaub* v. *Griffin*, 84 Md. 557, 564, 36 Atl. 443; *Carpenter* v. *Modern Woodmen*, 160 Iowa, 602, 142 N. W. 411, 415; *Smith* v. *Knowlton*, 11 N. H. 191, 196; *Griffin* v. *Northwestern Mut. L. Ins. Co.*, 250 Mich. 185, 229 N. W. 509, 512; *Southland L. Ins. Co.* v. *Norwood.* (Tex. C. App.), 76 S. W. (2d) 166, 167; *Goodier* v. *Mut. L. Ins. Co.*, 158 Minn. 1, 196 N. W. 662, 34 A. L. R. 1383, 1387; *Davie* v. *Briggs*, 97 U. S. 268, 24 L. ed. 1086, 1088.

 The reason which lies at the foundation of the rule we are discussing is, we apprehend, that the fact so presumed is not relevant to the question to be answered by proof. See 4 Wigmore, Evidence, § 2491. The real test of questions of admissibility is this: Does the fact offered in proof afford a basis for a rational inference of the fact to be proved? *Smith* v. *Martin*, 93 Vt. 111, 129, 106 Atl. 666; *Dalphe* v. *Bissett*, 99 Vt. 179, 182, 130 Atl. 591; *Girard* v. *Vt. Mutual F. Ins. Co.*, 103 Vt. 330, 335, 336, 154 Atl. 666; *State* v. *Howard*, 108 Vt. 137, 152, 183 Atl. 497. It is just so with presumptions. There must be a rational connection between the fact presumed and the fact to be proved. *McFarland* v. *American Sugar Ref. Co.*, 241 U. S. 79, 60 L. ed. 899, 904, 36 Sup. Ct. 498. The trouble here is that no such relation existed. Proof that one is alive on a certain day is, standing alone, enough to warrant an inference that he was alive on the following day. But proof that one was dead on a certain day is not, standing alone, enough to warrant an inference that he was dead on a previous day.

■ The charge excepted to was erroneous and harmful and requires a reversal.

Thus far, we have treated presumptions as of probative value and effect, as some, at least, of our cases require. We have said all that need be said to dispose of the case in hand. But as the case has to go back for a retrial, we deem it best to take advantage of this opportunity to re-examine our theory of presumptions and to test it by that of the best text-writers and the most thoughtful judicial decisions. Perhaps no topic of the law has perplexed the courts more than the scope and effect of legal presumptions. The complexities and subleties of the subject, enhanced, no doubt, by the variant theories regarding them and the confusion of thought manifested in the discussion of the questions incident to them, have given rise to a condition that has been characterized as "a welter of loose language and discordant decisions." *Watkins* v. *Prudential Ins. Co.*, 315 Pa. 497, 173 Atl. 644, 95 A. L. R. 869, 875. This court has not been free from offense. It was expected when *In re Cowdry's Will*, 77 Vt. 359, 60 Atl. 141, 3 Ann. Cas. 70, was decided, that the troublesome question as to the character and effect of presumptions was set at rest. The writer of this opinion had been of counsel below, and of course did not sit in the Supreme Court. So the case was argued before six judges. It was disposed of by four, Munson and Haselton, JJ., dissenting. Chief Judge Rowell, who wrote the opinion, was much impressed with the logic of Professor Thayer's rule that presumptions had no evidentiary value, but thought that our rule to the contrary had better continue as the law of our court. Then came *Sheldon* v. *Wright*, 80 Vt. 298, 67 Atl. 807, argued at the October Term, 1906. It fell to Judge Haselton, who wrote an opinion promulgating the doctrine of locative presumptions as distinguished from probative presumptions.

Whatever else may be said about this case, it must be recognized as a distinct relaxation of the rule of the Cowdry case and our other cases which preceded it. Since the Sheldon case was disposed of, there has been a growing feeling in the Court that we were out of line with the best authorities on the question of the probative effect of legal presumptions, though we have continued to follow the doctrine of that case. The feeling that we ought to put ourselves right on this subject approached a crisis

when *Belock* v. *State Mutual Fire Ins. Co.*, 108 Vt. 252, 260, 185 Atl. 100, came before us. It involved the presumption of innocence, which has been spoken of as the most sacred of all the law's presumptions. It was therein held that, though the presumption was evidence to be weighed in the plaintiff's favor, it was not error to fail to charge that it accompanied him throughout the trial. The opinion calls attention to the reference to the Thayer rule made in the Cowdry Will case, and the grounds upon which that decision was based, that our rule was embedded in our law, worked well enough in practice, and was supported by the Supreme Court of the United States. The opinion in the Belock case also calls attention to the fact that a majority of the courts have accepted the rule that the presumption of innocence is not evidence, and to a change of view by the federal Supreme Court as indicated by *Agnew* v. *United States*, 165 U. S. 36, 41 L. ed. 624, 630, and *Holt* v. *United States*, 218 U. S. 245, 54 L. ed. 1021, 1030, 31 Sup. Ct. 2, 20 Ann. Cas. 1138. Mr. Justice Moulton took occasion to express his views to the contrary of our rule regarding the probative effect of legal presumptions. All in all, the Belock case is not calculated to strengthen one's confidence in the rule heretofore recognized by this Court.

Upon a careful reconsideration of the whole subject, and with a keen appreciation of the wide-spread effect it will have upon our jurisprudence, but with a firm conviction that a false doctrine has dominated the subject and persisted in our law too long already, we have now reached the following conclusion:

A disputable presumption is a rule of law to be laid down by the court, which shifts to the party against whom it operates the burden of evidence, merely. It points out the party on whom lies the duty of going forward with evidence on the fact presumed. And when that party has produced evidence fairly and reasonably tending to show that the real fact is not as presumed, the office of the presumption is performed, and the fact in question is to be established by evidence as are other questions of fact, without aid from the presumption, which has become *functus officio.* To translate this statement into the language of this Court, all such presumptions are locative, merely. A presumption, of itself alone, contributes no evidence and has no probative quality. It takes the place of evidence, tempo-

rarily, at least, but if and when enough rebutting evidence is admitted to make a question for the jury on the fact involved, the presumption disappears and goes for naught. In such a case, the *presumption* does not have to be *overcome* by evidence; once it is confronted by evidence of the character referred to, it immediately quits the arena. The rule we now adopt applies to all disputable presumptions, including the presumption of innocence.

It was said by Mr. Justice Field in *Lincoln* v. *French,* 105 U. S. 614, 26 L. ed. 1189, that "presumptions are indulged to supply the place of facts; they are never allowed against ascertained and established facts. When these appear, presumptions disappear." The statement is inaccurate and misleading. A more accurate statement was made by Judge Rowell in *Vaughn* v. *Congdon,* 56 Vt. 111, 116, 48 A. R. 758, long before the Cowdry case arose, as follows: "Presumptions are indulged in only to supply the absence of evidence or averment respecting the facts presumed. They have no place for consideration when the evidence is disclosed or the averment is made." And again, after the Cowdry case was decided, Judge Rowell, in *Caledonia County Grammar School* v. *Kent,* 84 Vt. 1, 11, 77 Atl. 877, 880, said that "presumptions are indulged in only to supply the absence of evidence respecting the thing presumed, and have no place for consideration when the evidence is present."

Perhaps no better statement of the doctrine can be found than the one (slightly modified) in *Essmeister* v. *Roadway Transit Co.,* 275 Mich. 387, 266 N. W. 391, 392: Presumptions disappear when facts appear; and facts are deemed to appear when evidence is introduced from which they may be found.

It is not necessary or expedient to cite here all the cases to be found in the books that support our conclusions upon this much-discussed subject. Among those at hand at the moment are: *Colangelo* v. *Colangelo,* 46 R. I. 138, 125 Atl. 285, 286; *New Hampshire Savings Bank* v. *McMullen,* (N. H.), 185 Atl. 158, 160; *People* v. *Burbank,* 234 Mich. 600, 208 N. W. 687, 688; *Lohr* v. *Barkmann Cartage Co.,* 335 Ill. 335, 167 N. E. 35, 37; *Vincent* v. *Mutual Reserve Fund L. Asso.,* 77 Conn. 281, 58 Atl. 963, 966, 967, overruling *pro tanto State* v. *Smith,* 65 Conn. 283, 31 Atl. 206; *Commonwealth* v. *De Francesco Co.,* 248 Mass. 9, 142 N. E. 749, 34 A. L. R. 937; *Culpepper* v. *State,* 4 Okl. Cr

103, 111 Pac. 679, 31 L. R. A. (N. S.) 1166, 140 A. S. R. 668, per Richardson, J., quoting copiously from Wigmore, Thayer and Elliott in his support; *Dunn* v. *Goldman,* 111 N. J. Law, 249, 168 Atl. 299; *Kilgore* v. *Gannon,* 185 Ind. 682, 114 N. E. 446, L. R. A. 1917E, 530. For other cases to the same effect, see notes 34 A. L. R. 942, 94 A. L. R. 1043, and 95 A. L. R. 880.

Anything and everything in our cases to the contrary of the rule herein adopted as to presumptions is hereafter to be disregarded.

*Judgment reversed and cause remanded.*