# Margaret Gardner v. Department of Social Welfare

[380 A.2d 87]

No. 222-76

Present: **Barney, C.J., Daley, Larrow, Billings, and Hill, JJ.**

Opinion Filed November 2, 1977

*John A. Dooley, III*, Vermont Legal Aid, Inc., Burlington, for Plaintiff.

*M. Jerome Diamond*, Attorney General, and *David H. Greenberg*, Assistant Attorney General, Montpelier, for Defendant.

**Barney, C.J.** The appellant has been denied Medicaid and now appeals that determination. She is an 82-year-old widow presently residing in a nursing home. Two adult sons survive the father.

The essential facts begin in 1975. In June of that year the plaintiff and her husband, Lawrence Gardner, Sr., were living by themselves in an apartment in Burlington. Lawrence, Sr., notified his two sons, Lawrence, Jr., and John, that he was making each of them a $5,000 gift. This was consummated July 1, 1975. In August, because of the plaintiff's increasing senility, arrangements were made for Lawrence, Jr., to give up his job, take his parents into his home and care for them, all in return for a monthly payment. In late September, 1975, the plaintiff fell and broke her hip and was hospitalized, precipitating the Medicaid problem.

Sometime on or before October 1, 1975, the plaintiff's husband and son Lawrence met with a social worker at the

hospital to discuss the transfer from the hospital to a nursing home. At about the same time about $1,400 was withdrawn from the Gardners' savings account, with $1,000 being distributed to the two brothers and $400 going to Lawrence, Sr. This withdrawal had the effect of reducing the bank account to $50 below the minimum to qualify for Medicaid.

In discussing the matter with the social worker, the husband and son were told that Medicare would not cover the expected medical expense and Medicaid should be applied for. The findings state that the son exhibited some surprise. He made out the application, reporting the two $5,000 gifts, but did not mention the two $500 gifts and the $400 cash on hand.

On October 17, 1975, the plaintiff was discharged from the hospital to a nursing home. She remained in that home until mid-December when she returned to the hospital. In January, 1976, she was able to go back to the nursing home.

In the meantime, on October 28, the Department of Social Welfare denied the Medicaid application on the basis of the $5,000 gifts made in July. An appeal from that decision was withdrawn when the $500 gifts in October were discovered during a hearing in January.

In March, 1976, the plaintiff reapplied. On March 11, Lawrence Gardner, Sr., died; therefore his testimony was not available for the hearing on April 19, 1976. It was from this hearing that the findings were made that are challenged here following their adoption by the Human Services Board.

The sole question in the case revolves around the allocation of the evidentiary burden in the case and the evaluation of the evidence presented. The applicable Department regulations relating specifically to Medicaid as welfare assistance state that resource transfers by the individual or spouse which occurred less than two years before the date of application for Medicaid shall disqualify unless:

a. Apparent or stated reasons(s) for transfer, supported by adequate facts, establishes that the transfer was not made primarily to qualify for Medicaid (e.g. needed income, relief from excessive property costs and/or upkeep responsibilities, foreclosure imminent, etc.), or

b. The applicant received fair market value and remaining proceeds are within resource limitations.

    c. The applicant's equity in resources at the time of transfer to a legally liable relative has been exhausted on applicant's behalf, as demonstrated by expenditures by the relative to equal such equity for any one or more of the following:

        1. Medical care (physician, hospital, nursing home medications, health insurance, etc.);

        2. Funeral expenses of deceased spouse (including cemetery lot, perpetual care, marker and/or monument.

        3. Taxes, mortgage payments, property insurance.

        4. Cost of maintaining applicant's home (shelter, including normal repairs but not extensive improvements, and cost of basic requirements of food, clothing, incidentals, fuel, utilities, etc., according to department standards).

        5. Cost of maintaining applicant in the relative's home (shared household expense, room and board or custodial care, according to department standards).

The controversy centers around the evidentiary burden of proof assigned to the plaintiff when she sought to establish Medicaid eligibility. She argues that the Human Services Board, in adopting the findings and order of its hearing officer, improperly gave evidentiary weight to what is claimed by that Board to be a presumption against innocent transfer. Her position is strengthened by the hearing officer's statement in the findings that, "The board's opinion is that she has failed to dispel the doubts and suspicions that attach to these transfers as a matter of law and the department's decision to proceed on the basis of the general presumption is therefore affirmed."

The regulations distinguish between transfers of resources made more than two years before application and those made within that time. The language of the regulation is that transfers more than two years old "shall not affect eligibility." In the case of transfers made within the two-year period, the burden is placed on the claimant to establish that "the transfer

was not made primarily to qualify for Medicaid," otherwise disqualification will follow.

■ The Board discusses this requirement in terms of a presumption. The regulation does not use this language, even though it does so with respect to the transfer made more than two years before application. This is pointed out to demonstrate that the regulation distinguishes the two situations in terms of presumptions. Certainly it is not necessary to speak in terms of presumptions to have a regulation create one, but the difference in linguistic treatment is indicative of a difference in evidentiary evaluation expected.

Presumptions as devices in aid of decision of disputes are attempts to classify into workable rules all of the varied human experience with the probability of truth that one set of facts indicated the existence of some other fact or facts. Thus, there are different kinds of presumptions, relating to different fact situations. For a full discussion see Morgan, *Instructing the Jury Upon Presumptions and Burden of Proof*, 47 Harv. L. Rev. 59 (1933).

The regulation here clearly operates to allocate the burden of proof on the issue of the transfer not being made primarily to qualify for Medicaid. This is the same as the function of a so-called "locative" presumption, *i.e.*, to place the burden of going forward with evidence on the party against whom it operates as a rule of law and has no probative quality. *Tyrrell* v. *Prudential Insurance Co. of America*, 109 Vt. 6, 23-24, 192 A. 184 (1937). This is still the rule of this jurisdiction. *Town of Dorset* v. *Fausett*, 133 Vt. 476, 480, 346 A.2d 200 (1975).

The record in this case justifies the conclusion that the hearing officer and the Board improperly gave the claimed presumption evidentiary weight. Indeed, the Board argues in its brief that if the finder of fact is not satisfied with proof offered to rebut a presumption, he is at liberty to accept the evidence of the presumption. That is not the law of this jurisdiction with respect to this kind of "locative" function, and is error. *Estey* v. *Leveille*, 119 Vt. 438, 439, 128 A.2d 319 (1957).

The argument of the Board confuses the "locative" function with the duty to weigh and evaluate evidence. This fact finding function does indeed belong to the trier, and credibility is for him to resolve. But the weighing of this evidence comes after the operation of the presumption. The introduction of evidence which aborts the operation of the presumption to require a

decision against the burdened party alters the case. From one supporting a directed verdict as a matter of law in favor of the party benefitted by the presumption it becomes an evidentiary evaluation decision in favor of one party or the other. To throw into the scales against the burdened party the concept of such a presumption as evidence overburdens him, and is erroneous as a matter of law. See *Estey* v. *Leveille, supra,* 119 Vt. 438, 439, 128 A.2d 319 (1957).

Thus, it was for the trier of fact to determine only from the evidence presented whether or not the transfers were established to have been made not primarily to qualify for Medicaid. To this consideration the presumptions must not contribute. It should also be noted here that doubts and suspicions also cannot properly be given any evidentiary weight. *Fuller* v. *City of Rutland,* 122 Vt. 284, 289, 171 A.2d 58 (1961).

This does not dispose of the matter. If, in fact, there is no view of the evidence, taken alone, that would sustain a finding that the plaintiff did not make the transfers primarily to qualify for Medicaid, the result must be affirmed. But reviewing the findings themselves and coupling them with the requirement that the word "primarily" must be taken to have its usual and conventional significance, we cannot so state and cannot affirm. The large transfer was made prior to the Medicaid need triggered by the plaintiff's broken hip, and the evidence sustains a lack of knowledge at that time of either the need to resort to Medicaid or its requirements. The findings also suggest that the burden on the plaintiff can be satisfied only by proof of some acceptable external event triggering the transfer of funds. The regulation, we would point out, only requires proof that satisfies the trier that, whatever the purpose for the transfer was, it was not for the purpose of qualifying for Medicaid. True enough, proof of a different, specific and proper motivation would do that, but that is not the plaintiff's burden.

The plaintiff argues all this and further claims that the evidence properly in the findings justifies not a remand, but a reversal, and an adjudication here of entitlement to benefis. She says that there is evidence that the October transfers were, in fact, used for medical expenses of the plaintiff and therefore no disqualification under the regulations. If the October money did qualify under Regulation 2424.2.c.1., of course the original

motivation of that transfer is of no consequence, but there seems to be a conflict in the evidence about the actual use of those October funds. That being so, the proper result is a remand of the whole matter for rehearing below according to the proper standards for evaluating evidence and assigning the burden of proof.

*Reversed and remanded to the Human Services Board.*